TRUSTEES OF IOWA COLLEGE v. HILL.

1. PROMISSORY NOTE: INDORSEMENT: ONUS: CONSIDERATION: NOTICE: AS COLLATERAL SECURITY. When L executed and delivered to H four blank promissory notes, and authorized him to fill the blanks with sums not exceeding $5000 each, for the purpose of negotiating them for the benefit of L; and H delivered to L similar notes, to serve as receipts or indemnify him in case he (H) should misuse any of the funds arising from the negotiation of L's notes; and H returned the notes executed by L to him, with the blanks unfilled; and one of the notes executed by H was filled by L with the sum of $8,629 81, and passed to the plaintiffs, by indorsement as collateral security for an antecedent debt, it was held that the court did not err in instructing the jury:

1. That the *onus* of showing the consideration of the note was upon the maker, the presumption being that it was sufficient.

2. That if the indorsees were *bona fide* holders for a good consideration, it could make no difference that it was executed in blank, or that it was accommodation paper which had been misused by the indorser.

3. That if the transaction was an exchange of notes, the indorsee could not be defeated by showing that subsequent to the transfer, H had delivered up and cancelled the notes of the indorser.

4. That if H's notes were delivered merely to stand as receipts, to protect L in case H should misuse the funds arising from the notes given to him to negotiate, any note filled up by L, (his notes having been returned to him,) would in his hands be without consideration.

5. That the presumption was, that the indorsee took the note in good faith, in the usual course of business, before its maturity, and for a valuable consideration; that express or actual notice, that the note was without consideration, or that it had been filled up without authority, was not necessary; that it is sufficient, if the circumstances brought home to the plaintiffs, are of such a strong and pointed character, as necessarily to cast a shade upon the transaction, and put them upon inquiry; that the indorsees are not charged notice because of any want of diligence on their part in making inquiry, or if they took the note under suspicous circumstances, provided they had no notice actual or constructive of the equities between the original parties; that the defendant was not bound to prove that the plaintiff purchased with full and certain knowledge of the want of consideration, but if the circumstances

attending the transfer of the note were such as to put them on their guard, or if they must have known therefrom, that the person offering it had no right to transfer it, then they were bound to make inquiry, and if they did not, they took the note at their peril.

6. That though plaintiff took the note as collateral security for an antecedent debt, they are nevertheless *prima facie*, though not conclusively, to be considered as holders for value, and it is on the defendant, to show that they are not such holders; that if it was taken for collateral security only, the plaintiff parting with nothing, giving no time, relinguishing no right, nor suffering damages or injury as the consideration, or in consequence of receiving it, they would not be such holders.

2. IMPERTINENT INSTRUCTIONS. A court is not bound to repeat an instruction previously given; nor should an instruction be given which is abstractly correct but is not pertinent to the actual facts developed on the trial.

3. HYPOTHETICAL INSTRUCTIONS. It is erroneous to instruct upon a hypothetical state of facts, of which there is no evidence.

*Appeal from Scott District Court.*

THURSDAY, DECEMBER 19.

ASSUMPSIT upon a promissory note for $8,629 81, payable to the order of Joseph Lambrite, and transferred to plaintiff before maturity. The defense is, in substance, a want of consideration, the answer further averring that plaintiff had notice thereof, or if not, that the note was not transferred in due course of trade for value. Upon the issue thus made, there was a trial, verdict and judgment for defendant, and plaintiffs appeal.

*James Grant* for the appellant.

I. To charge an assignee of a note with notice of fraud, or want of consideration in its inception, such notice must be proved. And the assignee can not be charged with such notice, by reason of any want of diligence on his part in ascertaining the fact of such fraud; or want of consideration, even when he is in a situation where such facts can be

Trustees of Iowa College v. Hill.

ascertained by enquiry. There must be something illegal or wrong on the face of the note, or the circumstances attending the transfer must be of so suspicious a nature as to warrant a belief that the assignee took it fraudulently; otherwise he is a *bona fide* holder. See 4 Iowa, 140; 1 Pick., 256; 12 Ib., 545; 10 Cush., 491; 8 Conn., 337; 5 Wend., 556; 2 John., 50; 4 Hill, 442; 2 Ib., 241; 1 E. D. Smith, 161; 14 Peters, 318; 3 Watts, 20; 1 Yerger,. 387; 22 E. L. & E., 484; 33 Ib., 276; 8 Com. B., 100.

The later English cases go further, and hold that nothing less than actual fraud between the plaintiff and the endorser defeats the plaintiffs' right to recover. See 4 A. & E., 870; 10 Ib., 784; 1 Comp. & R., 849; A. & E. (N. S.) 498.

II. It is a well settled principle of law, that when a party signs a note in blank, and passes it to another party, he gives that party a right to fill up said note, with a date and amount, and to make any use of it he wishes. 4 Mass., 54; 1 Cowen, 337, and case reported in note to same; 13 Georgia, 55; 5 Cranch, 142; 1 H. Bl., 313; 2 M. & S., 90; Doug. 514; 22 E. L. & E., 516; and the party making the note, will be bound to a *bona fide* holder.

III. When cross notes are made and specifically exchanged by the makers, each note is the proper note of the maker thereof, and each holder a purchaser, for value. 2 Denio, 621; 1 Wend., 82; 24 Ib., 94; 4 Dorr, 358; 1 B. & A., 521; 3 East, 72; 1 H. Bl., 570; 1 Penn. R., 565.

IV. A *bona fide* holder of a negotiable instrument transferred to him before maturity, in payment or as collateral security to a preexisting debt, is a holder for a valuable consideration, and as such entitled to protection against all the equities existing between the original parties. 16 Peters, 1; 2 McLean, 589; 26 Verm., 589; 8 Met., 40; 3 Cush., 168; 5 R. I., 515; 11 Comp., 388; 2 Bosworth, 248; 5 Sandf., 9; 2 Paige, 509; 1 Zabriskie, 115; 10 Barr, 205;

9 Gill, 137 ; 6 Iredill, 197 ; 2 Kelly, 93 ; 3 Ib., 47 ; 12 S. & M., 462 ; 6 Texas, 575 ; 11 Mo., 101 ; 27 Ib., 940 ; 11 Ohio, 172 ; 1 Smith, 89.

In England, for a long series of years, the current of authorities in all courts is directly and constanaly in favor of this doctrine. See 3 Burrows 1664 ; 1 Starkie, 1 ; 8 Vesey,' 531 ; 4 Bing., 496 ; 1 Ib. (N. S.) 469 ; 2 C. M. & R., 180 ;' 9 C. & P., 659 ; 9 Ib., 664 ; 1 E. L. & E., 529 ; 8 M. & A., 494.

V. That portion of the charge of the judge in the court below, referring to the insolvency of Lambrite, was uncalled, unwarranted by any testimony, and in every respect contrary to the policy of the law, as well as to express statutory enactment. See 20 Howard, 252 ; 3 Iowa, 257 ; 1 G. Greene, 275 ; 1 Ib., 401 ; 4 Ib., 159.

VI. The verdict in favor of the defendant, was against the law and the evidence ; and this is plain from a general examination of the case.

*Davison & True* and *J. J. Limdley*, for the appellant.

I. The court instructed the jury, that if they should find the note unsupported by any consideration, as between Hill and Lambrite, still the plantiffs can recover if they received the note in good faith, in the usual course of business, before maturity and for a valuable consideration ; that the law, in the absence of any showing to the contrary, presumes that they did thus receive it ; that if they took the note with notice of the equities which would defeat it as between the original parties, they can not recover ; that as to this notice, express or actual notice is not indispensable, circumstances of such a strong and pointed character as necessarily to cast a shade upon the transaction and put the holders upon enquiry being sufficient ; that plaintiffs are not charged by reason of any want of diligence on their part in making inquiry, not even if they took the note under suspicious

circumstances; that they are not required to exercise any caution until the circumstances brought home to them necessarily cast a shade upon the transaction, and put them upon inquiry; that the circumstances must be such that the plaintiffs must have known that the person offering it had no right to transfer it, before they can be put upon inquiry; that in determining this question of notice as thus explained, the jury might look at all the circumstances attending the transaction. This view of the law is sustained by the authorities. Story Prom. Notes, § 197; Story Bills, § 197; 3 Kents Com., 82, 83; *Ayer* v. *Hutchins*, 4 Mass., 370; *Cone et al.* v. *Baldwin*, 12 Pick, 546; *Hall* v. *Hale*, 8 Conn., 337; *Beltzhoover* v. *Blackstock*, 3 Watts, 20; *Hunt* v. *Sandford*, 6 Yerg. 387; 1 Am. L. C., 338; *Sandford* v. *Norton*, 14 Verm., 228; *Fowler* v. *Brantley et al.* 14 Pet., 318; 1 E. D. Smith, New York Conn. R., 161; *Brown* v. *Taber*, 5 Wend., 565; *McKerson* v. *Sternberg*, 3 Ohio S. R., 156; *Russell* v. *Haddock*, 3 Gill, (Ill.,) 233; *Kelley* v. *Ford*, 4 Iowa, 140; *The State Bank* v. *The New Orleans Navigation Company*, 3 La. Ann. R., 294.

We believe it is true that some of the English cases go further than the authorities cited by us, but they have fluctuated. In *Lawson* v. *Weston*, 4 Espinasse 57, decided in 1801, Lord KENYON and the English court held the law as we contend in this case. In *Gill* v. *Cubit*, 3 Barn. & Cress. 466, decided in 1824, the court expressly disapproved of, and overruled *Lawson* v. *Weston*, and held that the "indorsee is to be charged with notice, if he took the note or bill under circumstances which ought to excite the suspicions of a prudent man." Afterwards in 1834, in *Backhouse* v. *Harrison*, 5 Barn. & Adolph. 1098, and in *Crook* v. *Jadis*, 5 Barn. & Adolph. 909, the court modified *Gill* v. *Cubit*, and came back to what is, in substance, the law as given in the instruction of Judge DILLON, not going however, perhaps, quite so far. In 1836, in *Goodman* v. *Har-*

*vey,* 4 Adolph. & Ellis 870, the court went farther and held that the indorsee might recover, unless there be proof of bad faith." And Byles on Bills of Exchange, pages 120 and 126, states the English law to be as in *Goodman* v. *Harvey,* quoting that case in the text.

II. The court instructed the jury, that even though the note be without consideration as between Hill and Lambrite, and even though the plaintiff took the note as collateral security for an antecedent debt, still they are *prima facie* to be considered holders for value, though not conclusively; and that it is upon the defendant to show that plaintiffs are not holders for value. But that if the jury shall find from the evidence that the note was taken by the plaintiffs as collateral security only, for an antecedent debt, due them from Lambrite, making no new advances on the credit of it at the time of receiving it or afterwards, not taking it in payment or extinguishment of a pre-existing debt, not agreeing to give any time or forbearance, nor surrendering, any security, nor relinquishing any right in consideration of receiving it, nor suffering any injury or damage in consideration or in consequence of receiving it, nor giving any consideration to Lambrite therefor, then the plaintiffs are not holders for value, and the defendant may avail himself of t. e same equitable defences which he might have set up against Lambrite. Of these instructions the plaintiff has no reason to complain. *Bramhall* v. *Bechtel,* 31 Maine 205; *Williams* v. *Little,* 11 N. H. 66; *Jenness* v. *Bean,* 10 Ib. 266; *Bay* v. *Coddington,* 5 Johns. Ch. 55; *Coddington* v. *Bay,* 20 Johns. 637; *Stalker* v. *McDonald,* 6 Hill 93; *Petrie* v. *Clark,* 11 Serg. & Rawle 377; *Kirkpatrick* v. *Muirhead,* 16 Pa. (4th Harris,) 117; *Prentice et al.* v. *Zane,* 2 Grattan 262; *Reddick* v. *Jones,* 6 Iredell 109; *Cullam* v. *Bank of Mobile,* 4 Ala. 21; *Andrews & Bro.* v. *McKay,* 8 Ala. 920; *Kimbro* v. *Lytle,* 10 Yerger 417; *Nichol, Hill & Co.* v. *Bate,* 10 Yerger 429; *Brooks* v.

Trustees of Iowa College v. Hill.

*Whitson*, 7 Smedes & Marsh. 513 ; *Bertram* v. *Barkham*, 13 Arkansas 150; *Goodman* v. *Simonds*, 19 Missouri 106 ; *Roxboro* v. *Meesick*, 6 Ohio State 448 ; 1 American Leading Cases 336 ; *McConnell* v. *Hudson*, 2 Gilm. (Ill.) 648. We have not cited the English cases for the reason that they are cited and commented on ably and elaborately in 6 Hill 93 ; 5 Johns. Ch. 95 ; 11 Serg. & Rawle 377 ; 31 Maine 205 ; and 6 Ohio State 448, which we have cited, and to which we refer for a view of the English authorities.

As to paper taken as collateral only, to prior indebtedness, we believe the doctrine of *Bay* v. *Coddington* was not seriously questioned till 1842, when the decision in *Swift* v. *Tyson*, 16 Peters 1, was made. This was the case of negotiable paper taken in absolute payment of a pre-existing debt. The opinion of the court is by Judge STORY. He very properly decided that the holder took the paper discharged of equities ; and this was all that the case required him to decide. But he travels broadly and widely out of the case, to enunciate the doctrine that paper transferred as collateral security for a prior debt, rests on the same basis as paper taken in absolute payment of such debt. The authorities there cited, sustain the doctrine as to payment, but not as to collateral ; but Judge STORY does not pretend to discriminate in the authorities. All that the court said on the subject of "collateral" was *obiter*. Judge CATRON filed an opinion, dissenting from everything said on that subject, because it was not properly in the case.

Let us examine the authorities on the other side, and see how much progress Judge STORY's new doctrine has made :

The case of *Blanchard* v. *Stevens*, 3 Cush. (Mass.) 162, was one where a note was transferred in payment of a prior debt. DEWEY, J., gives the opinion of the court, and approves *Swift* v. *Tyson*, *dictum* and all. All that is said as to collateral is *obiter*.

In *Allaive* v. *Hartshorne*, 1 Zabriskie 665, the note in question was transferred in consideration of $750, then advanced, and of the surrender of the security of a prior debt of $400. The court approves *Swift* v. *Tyson*, but its lucubrations as to collateral are *obiter*.

The case of *Fellows et al.* v. *Harris et al.*, 12 S. & M. (Miss.,) R., 462, is where the note is transferred as collateral security, but with an agreement that the holder should wait for the payment of the debt. The court gives a weak and wavering opinion. It thinks that it sympathizes with STORY, J., in *Swift* v. *Tyson;* and finally decides, that the agreement to wait and forbear was a sufficient consideration for the transfer. That which was *obiter* in 16 Peters is also *obiter* in this case.

*Gibson* v. *Conner*, 3 Georgia R., 47, is a genuine case of transfer, as collateral security merely, for an antecedent debt. The court indorses the *dictum* of STORY, J., and decides the case accordingly. This was in 1847.

But ten years later, in the case of *Meadow* v. *Bird*, 22 Georgia R., 246, the same question came before the Georgia court. Two of the judges decided the case the same way; but the third, (McDONALD, J.,) filed a dissenting opinion, elaborately reviewing the authorities, and repudiating in toto, the doctrine in 3 Georgia, 47.

*Valette* v. *Mason*, 1 Smith (Ind.) 89, and 8 Met. R., 40, are cases where it is not stated whether the debt was created at the time of the transfer, or previously. The court in *Roxborrough* v. *Meessack et al.*, 6 Ohio Stat. R. 448, treat the above two cases, as transfers as collateral security for debts created at the time. They are not well considered cases, and the real question in the case at bar, does not seem to have been considered at all.

*Brush* v. *Scribner*, 11 Conn. R., 388, is a case of payment, and nothing else is decided. 2 Bosworth, 248, is a case where other collateral securities were surrendered, in

Trustees of Iowa College v. Hill.

consideration of the transfer of the note in question. 5 Sandf., 9, the transfer was in payment; and besides, there was no valid defence between the original parties. 2 Paige, 509. The Chancellor, (WALWORTH) says, in his opinion, that the question (here at bar) is not raised in that case. 10 Barr, 235, (Spring's appeal,) is not applicable. The note in question was given for value between the original parties, assigned to the bank as collateral, for advances made and to be made, (past and future.) The defense between the original parties grew out of matters accruing subsequent to the transfer, and the holder continued to make advances on the credit of it, before they had any notice of the accruing equities.

In 9 Gill, 137, the transfer was as collateral security for a loan of money obtained at the time. On this very ground, the court considered the plaintiff as a holder for value.

The case in 6 Iredell, 107, is cited by defendant. It is a case of payment, and the court repudiated the position contended for by the present plaintiff.

*Greeneaux* v. *Wheeler*, 6 Texas R., 515. The transfer was partly in consideration of cash paid, and groceries delivered at the time, and partly in payment of a prior debt. The opinion of the court does not pretend to go beyond the facts in the case.

The appellant cites 11 Missouri, 101, and 27 Missouri, 440. We have cited 19 Missouri, 106. It is a "settler" of the doctrine of the Missouri court at that time. There has been no later decision, modifying or overruling it. The 27 Missouri, 440, cited by appellant, is not applicable to the case.

The case in 11 Ohio R., 172, relates to the payment of an antecedent debt. Any suggestions of the court beyond that are *obiter*. And a later case in that court, cited by us, 6 Ohio Stat., 448, settles the doctrine in the courts of Ohio.

The recapitulation of the appellants' authorities on this point, then, is as follows:

The court of Georgia, in a pertinent case, (3 Georgia R. 47,) sustained the doctrine of appellant. But afterwards, (22 Georgia R., 246,) a third of the court dissent.

The courts of Vermont and Rhode Island, have adopted it, but on a kind of half-way ground. They say there is presumed to be some consideration in the matter, as extension, favor, lenency or otherwise. (Judge DILLON's charge went to same extent.) All that is said in the subject in 16 Peters, 1; 3 Cush., 168; 11 Conn., 388; 1 Zabriskie, 665; 11 Ohio, 172; 12 Smed. & Marsh. 462, is *obiter.*

WRIGHT, J.—This case has been very fully argued by counsel; seldom have we found one more so. We have examined it with great care, and now proceed to state our conclusions, without much elaboration of the points made.

Three questions of fact, under the instructions of the court, were presented for the determination of the jury: *First,* Was the note obtained without consideration? *Second,* Had plaintiffs notice of this before taking the same? *Third,* If they had not this notice, did they take it for value in the due course of trade. It is manifest that the jury must have found for the defendant upon the first question, for this determined in favor of plaintiffs would have entitled them to a verdict. It is equally clear that their finding must have been in favor of defendant upon one or both of the other issues. The first, and either of the others, if decided in favor of defendant, entitled him to a verdict. Whereas, a contrary result as to the first, or that found for defendant and the other two against him, would have compelled a verdict for plaintiffs.

What was the consideration then, was the first material inquiry. Briefly, the defendant claims that at the time the note was given, he, a resident of Davenport, was about to

visit Boston; that Lambrite called upon him and left four blank notes signed by said Lambrite, which defendant had the privilege of filling up, in sums not to exceed $5000 each, for the purpose of negotiating the same in Boston for the benefit of said Lambrite; that after the notes were thus signed and delivered, defendant at his own instance handed to Lambrite four similar blank notes, including the one now in suit, to serve as a receipt or to indemnify him in case defendant should misuse any funds that might be raised on Lambrite's notes; that he never used the notes obtained from Lambrite, but on the contrary returned the same to him, without even having filled them up; that Lambrite filled up one of the notes thus signed by defendant, with the sum of $8629, 81, and passed the same to plaintiffs. On the part of plaintiffs it is claimed that the transaction was an exchange of notes, each party having the right to fill up and negotiate the paper thus delivered, and thus raise money for himself. To support these respective claims the parties introduced a very great amount of testimony, after considering all which the jury found for defendant. And to sustain this finding we think the testimony is most abundant. That it is was ever intended by the parties, that Lambrite should use the blanks delivered to him, except to indemnify himself, should the contingency arise, we do not for one moment believe. We are equally clear that Lambrite never intended to thus use them, and that he only concluded in an evil hour to thus use defendant's name, to do which was at most but partial justice to the plaintiffs, whose funds, which had come into his hands as treasurer, he had used and which he hoped to be able to replace, and redeem the note without the negotiation being known to Hill. Nor do we think any just exception can be taken to the instructions on this subject. The *onus* was upon the defendant. The presumption was that the consideration was right in every

particular and it was incumbent on the defendant to rebut this presumption. If plaintiffs were *bona fide* holders for value, then it could make no difference that the note was signed in blank; nor that it was accommodation paper merely and had been misused by Lambrite. If the transaction was an exchange of notes, then so far, plaintiffs could not be defeated by showing that subsequent to the transfer, defendant had delivered up and cancelled the notes of Lambrite. If, however, the notes of Hill were delivered, not as accommodation paper, but merely to answer in the place of a receipt or receipts, or to protect Lambrite in case Hill should misuse the funds arising from the notes delivered to negotiate, any note filled up by Lambrite, (his notes not having been used,) would in his hands be without consideration. All this was stated to the jury, and substantially and correctly covered the whole law of the case touching the question of consideration. Nor was there any error in refusing those asked by plaintiffs upon the same subject. In the first place so far as applicable, they were covered by the instructions in chief. In the next place, while some of those asked and refused, as abstract propositions were good law, the giving of them could have answered no good purpose under the testimony submitted. We take occasion to say what we have frequently repeated; that a court is not bound to repeat an instruction previously given. Nor should an instruction be given, which though abstractly correct, is not pertinent to the actual facts developed upon the trial.

II. Did the plaintiffs take the note with notice ? With the question of facts here involved, we have nothing to do more than to say that if the jury found in the affirmative, we should entertain very heavy doubts of the correctness of the verdict. As the discussion of this question, however, will be immaterial, from the final view we shall take of the case, we shall confine ourselves to the law governing it as given by the court.

The jury were told that the presumption was that plaintiffs took the note in good faith, in the usual course of business, before its maturity and for a valuable consideration ; that exp.ess or actual notice that the note was without consideration, or that it had been filled up without authority was not necessary.    That it was sufficient if the circumstances brought home to the plaintiffs are of such a strong and pointed character as necessarily to cast a shade upon the transaction and put them upon inquiry.    They are not to be charged with notice because of any want of diligence on their part in making inquiry, or even if they took the note under suspicious circumstances, provided they had no notice actual or constructive of the alleged equities subsisting between Lambrite and Hill.    That defendant was not bound to prove that the plaintiffs purchased with full and certain knowledge of the want of consideration, but if the circumstances attending the transfer of the note were such as to put them on their guard, or if they must have known therefrom that the person offering it had no right to transfer it, then they were bound to make inquiry, and if they did not they took the note at their peril.    Other instructions bearing upon this question, referring more in detail to the facts developed, were given, but the foregoing will serve to show the general view of the law taken by the judge trying the cause. To these we do not think plaintiffs can have any just ground of exception.    As sustaining them see :    *Kelly* v. *Ford*, 4 Iowa 140 ; *Clapp* v. *Cedar County*, 5 Ib. 58 ; Story on Notes § 197 ; *Cole* v. *Baldwin*, 12 Pick. 546.    In this connection appellants insist that certain instructions were erroneous, for the reason that they were based upon a state of facts of which there was no testimony.    We recognize fully the rule that it is erroneous to instruct upon a hypothetical state of facts of which there is no evidence.    *Moffitt* v. *Crumbe*, 8 Iowa 122 ; *U. S.* v. *Brentling*, 20 Howard 252.    But the rule has no application in this case, for the reason, that in one instance the instruction was clearly applicable, and as to

the other appellant clearly mistakes the language used by the court. Thus, we should be very far from holding that there was no testimony as to Lambrite's insolvency at the time of the transfer. On the contrary we think they would have been fully justified in finding him notoriously so. This is certainly the impression the testimony makes upon our minds. And then as to the other instruction, the objection is, that the jury were told that notice to one agent is notice to another, whereas the instruction given is, that notice to the agent of matters coming within the purview of the his agency was notice to the principal. In this part of the case therefore, there was no error in the action of the court.

III. The question of most importance, and that most discussed by counsel, arises under the third branch of the case As already suggested, it is claimed by defendant, and the evidence tends to prove that plaintiffs received this note from Lambrite as collateral to secure a pre-existing indebtedness, and upon this subject the court instructed, that though plaintiffs took the note as collateral security for an antecedent debt, they are nevertheless, *prima facie*, though not conclusively, to be considered holders for value, and it is on the defendant to show they are not such holders. If it was taken for collateral security only; if plaintiffs parted with nothing, and agreed to give no time, and in fact, gave no consideration for it; agreed to relinquish no right, and did not suffer any damage, or injury as the consideration, or in consequence of receiving it, the plaintiffs would not be such holders. Other instructions upon the same point were given, and some asked by the parties refused, which, however, need not be recited, for if the foregoing is the law, it in our view, renders the consideration of all the others unimportant, and the same is true, if it is not the law.

Two propositions are said by Justice STORY, to be laid up among the fundamentals of the law, and to require no authority or reasoning to support them. The first is, that

a *bona fide* holder of a negotiable instrument, for a valuable consideration, without notice of facts which imperil its validity as between antecedent parties if he takes it by endorsement before the same becomes due, holds the title unaffected by these facts, and may recover thereon, although as between the antecedent parties, the transaction may be without any legal validity. The second is, that the holder of negotiable paper taken before it is due is not bound to prove that he is a *bona fide* holder for a valuabble consideration, without notice, for the law will so presume in the absence of all rebutting proofs, and therefore it is incumbent upon the defendant to overcome by satisfactory proofs the *prima facie* title of the plaintiff. *Swift* v. *Tyson*, 16 Pet., 1. But as applied to this case, the question remains, what constitutes a valuable consideration under the general rule applicable to negotiable instruments?

It was held by this court in *Johnson* v. *Baney*, 1 Iowa, 531, as settled by the current of decisions, that the rights of the holder of negotiable paper are the same whether the debt for which it is transferred is pre-existing or contracted at the time. This of course referred to a case where the instrument was taken, in satisfaction or payment of the pre-existing debt; for by reference to the case it will be found that while the question of the rights of a holder who takes the paper as collateral security on a previous liability was discussed by counsel, it was not decided, as the case was disposed of upon another point. At that time, however, the question was very elaborately discussed by able counsel, and the writer of this opinion, who is the only member of the present bench who heard the argument, concurred with those authorities which hold in accordance with the instructions given in this case. He has seen no reason to change the view then entertained, and this being the opinion of the other members of the court, is so held.

Authorities upon the subject are to be found, perhaps, in

Trustees of Iowa College v. Hill.

every State in the Union, except our own, to say nothing of the adjudications in the federal courts and those of England. The most casual reader, however, must be struck with the number of times the question has been determined without really arising. If the evils resulting from an indulgence in mere *obiter dictum* were ever apparent, they are peculiarly so in this instance.

Taking it for granted, that taking the note in payment and as collateral security merely, were the same in principle, as affecting the rights of the assignee, cases of the first character are decided, and then it is announced without the least necessity, or occasion for it, that the same rule applies in the second. And well might Justice CATRON, in the leading case of *Swift* v. *Tyson, supra,* say that what is incorporated in the principal opinion on this subject was aside from the case made by the record or argued by counsel.

The same thing occurs in effect in *Bond* v. *Central Bank,* 2 Kelley, 106, and based upon the reasoning there used to a great extent, NESBET, J., decides the case of *Gibson* v. *Conner,* 3 Ib., 47. So in *Allaine* v. *Hartshorne,* 1 Zabriskie, 665. The note was transferred for a consideration then advanced in part, and though the question as applied to collaterals, did not arise, it was discussed and decided. The case in 11 Ohio, 172, is clearly one of payment, and all that is said about collaterals is *obiter* and nothing else. So again in the case of *Blanchard* v. *Stevens,* 3 Cush., 162, required nothing more than the recognition of the principle, that the receiving of the note in payment of a pre-existing debt, will exclude all equities between the original parties, and thus we might in almost numberless cases show the truth of the general remark above made. But these will suffice. Some cases are found where the question under discussion fairly and legitimately arose, and was decided as claimed by appellants. Of this character is the case in 3 Kelly, *supra.* (But see *Meadow* v. *Bird,* 22 Georgia, 246;)

*Bank* v. *Carrrington*, 5 R. Is., 515, and some others referred to by counsel. The case of *Bank* v. *Chapin*, 8 Met., 40, however, does not in its facts come clearly within the rule. The debt for which the note in suit was pledged, was not a pre-existing one.

But without further reference to these cases we conclude, that the correct rule is found clearly stated in *Roxborough* v. *Meesick*, 6 Ohio, St. R., 448, thus: "When the note is transferred as collateral security and for value, such as a loan or further advancement, or a stipulation, express or implied, of further time to pay a pre-existing debt, or the like, the assignee will be protected from infirmities affecting the instrument before it was thus transferred. If, however, the note is transferred as collateral security to a pre-existing debt, without any consideration, so that the transfer is a mere voluntary act on the part of the debtor, and is received by the creditor without incurring any new responsibilty, parting with any right, or subjecting himself to any loss or delay, and leaving the subsisting debt precisely in the condition it was before such transfer, the holder has not taken the note for value, nor in the usual course of trade." "To hold otherwise" says SWAN, J., in that case "would be a departure from the established rules of law, governing the rights of parties to negotiable paper, and losing sight of the ground of public policy upon which the law is founded."

And the annotators' note, to *Swift* v. *Tyson*, 1 Am, Lead. Cases, 336, states this rule substantially as one that may be considered as settled, and to support it refers to cases in Pennsylvania, Connecticut, Maine, New Hampshire, Ohio, Kentucky, Illinois, Alabama, Michigan and Delaware.

Affirmed.