| | |
|---|---|
| 72 | 563 |
| 104 | 528 |
| 105 | 409 |

| | |
|---|---|
| 72 | 563 |
| a109 | 521 |

| | |
|---|---|
| 72 | 563 |
| e120 | 361 |

</div>

## CLARK v. BARNES & SONS ET AL.

1. **Partnership**: FACTS NOT CONSTITUTING. S. & W. agreed to furnish to defendants the stock and money required to manufacture certain articles, the profits to be equally divided between them and defendants. There was no agreement for S. & W. to share the losses, and they had no control of the business, and were not held out as partners of defendants. *Held* that there was no partnership, and that S. & W. were not bound by a chattel mortgage of the stock made by defendants to plaintiff

2. **Chattel Mortgage**: NOTICE TO SUBSEQUENT PURCHASER: WHAT IS NOT. A chattel mortgage warranting title to the property, except as against "an existing mortgage of record in Poweshiek county," (the county where the property was,) does not, without more, charge the second mortgagee with notice of a prior unrecorded mortgage on the property.

3. ———: PRIORITY: PRE-EXISTING DEBT: CONSIDERATION. An unrecorded chattel mortgage cannot prevail against a subsequent one taken in good faith and without notice, though taken for a pre-existing debt not extended, where the second mortgagee enters into possession and assumes control of the business connected with the mortgaged property; for the responsibility thus assumed becomes a valid present consideration for the second mortgage. (Compare *Trustees of Iowa College v. Hill*, 12 Iowa, 462, and *Ryan v. Chew*, 13 Id., 589.)

*Appeal from Poweshiek Circuit Court.*

WEDNESDAY, OCTOBER 12.

ACTION in equity to foreclose a chattel mortgage executed by A. H. Barnes & Sons to the plaintiff. Seig & Williams

were made defendants upon the ground that, as the plaintiff claimed, the last-named partnership was a member of the firm first above named. Seig & Williams filed an answer denying the allegations in the petition, and setting up in a cross-petition that said partnership owned a mortgage executed by Barnes & Sons on the same property, and asking that it be foreclosed and declared the prior lien thereon. The relief asked by the plaintiff was denied as against Seig & Williams, and that asked in the cross-petition was granted. The plaintiff appeals.

*Norris & Preston* and *Winslow & Varnum*, for appellant.

*A. J. Hirschl* and *Haines & Lyman*, for appellee.

SEEVERS, J.—Prior to August 1, 1885, A. H. Barnes & Sons were engaged in business at Grinnell, Iowa; such business being a "general jobbing, blacksmithing and wagon-building business." During such time Seig & Williams were in business at Davenport, Iowa, and sold and furnished Barnes & Sons materials used in the business of the latter. The following agreement was entered into between the two partnerships:

"DAVENPORT, IOWA, August 1, 1884.

"The following agreement is entered into between Seig & Williams of Davenport, Iowa, and A. H. Barnes & Sons of Grinnell, Iowa, viz.: That as Barnes & Sons, requiring more money than they had, and wishing to manufacture one hundred complete jobs, and would require about $6,000 in stock and labor outside of their regular business; and Seig & Williams agree to furnish the stock and money required for these one hundred jobs on the following conditions: When the spring wagons or buggies made from this stock shall be made, and when the notes taken from farmers or others shall be received, they shall be placed in the First National Bank of

Grinnell for collection, indorsed by A. H. Barnes & Sons, and, when collected, to be remitted to Seig & Williams; and they with A. H. Barnes & Sons to share in the profit of this one hundred jobs over the actual cost of manufacture and selling. The estimate of cost of two-seat spring wagon complete being about $65, this would include something for selling same, and the selling prices expected to be as heretofore, ranging from $90 to $110, or averaging about $100. Seig & Williams, on their part, to furnish the stock and money, when demanded; and A. H. Barnes & Sons, on their part, to manufacture, economically and good, the work, and to make sales, and to take only good notes if possible."

In June, 1885, the partnership of Barnes & Sons executed to the plaintiff a bill of sale of the entire stock of wagon and buggy material then on hand, to secure him against loss on certain notes he had signed, and others he expected to sign, as security for Barnes & Sons. On the 15th day of December, 1885, Barnes & Sons executed to Seig & Williams a mortgage on all the stock of goods, fixtures and manufactured articles then on hand, to secure certain indebtedness due the latter. This mortgage was filed for record before the bill of sale, and Seig & Williams claim they entered into possession upon the execution of the mortgage. The plaintiff claims that Seig & Williams had notice of his unrecorded prior bill of sale when the mortgage was executed; and that Seig & Williams, under the agreement of August 1, 1884, became members of the firm of Barnes & Sons. The plaintiff further claims that the mortgage executed to Seig & Williams was to secure a past indebtedness; that there was no extension of time of payment of said indebtedness; and that Seig & Williams did not relinquish anything they had, or incur any additional responsibility. Upon these grounds, counsel for the appellant claim that the mortgage to Seig & Williams must be postponed to his bill of sale.

I. Should Seig & Williams be regarded as members of

the partnership of Barnes & Sons? The former agreed to

**1. PARTNER-SHIP: facts not constituting.** furnish the stock and money required to enable Barnes & Sons to manufacture one hundred spring wagons or buggies; the profits to be equally divided between the two partnerships. Did this agreement create a partnership? We think not, for the reason that Seig & Williams did not share the losses, and had no control over the business, and were not held out to the world as partners. It is not claimed that the plaintiff became security for Barnes & Sons under the belief that Seig & Williams were members of such partnership. Besides this, we find that the business was conducted between the two partnerships in precisely the same manner after as it had been prior to the first day of August, 1884. The following authorities support our conclusion: *Richardson v. Hughitt*, 76 N. Y., 55; *Loomis v. Marshall*, 12 Conn., 69; *Beecher v. Bush*, 45 Mich., 188; S. C., 7 N. W. Rep., 785; *Williams v. Soutter*, 7 Iowa, 435; *Munson v. Sears*, 12 Id., 172; *Ruddick v. Otis*, 33 Id., 402; *Mollwo v. Court of Wards*, L. R., 4 P. C., 419. This citation could be greatly enlarged. We have examined the authorities cited by counsel for the appellant, and think they are distinguishable; but, if mistaken in this, we regard the rule in this state to be established against the appellant in the cases cited.

II. It is insisted that Seig & Williams had actual notice, at the time the mortgage was executed, of the bill of sale to

**2. CHATTEL mortgage: notice to subsequent purchaser: what is not.** the defendant. Among other things, it is stated in the mortgage as follows: " And the said party of the first part warrant the title against all persons, except an existing mortgage of the record in Poweshiek county." The mortgages embraced both real and personal property, and it is usual to warrant the title in mortgages on real estate, but this is not so, we think, in mortgages on personalty. Whether there was a mortgage on the real estate is not disclosed by the evidence, and possibly is not material, for we think the burden is on the

plaintiff to show that his bill of sale was meant by the refer-
ence made in the mortgage. We are strongly impressed
from the evidence that Barnes & Sons did not, at the time it
was given, intend the bill of sale should be recorded, and
there is no sufficient evidence that they supposed it was at
the time the mortgage was given. But, be this as it may,
we think it was incumbent on the plaintiff to introduce at
least some evidence showing that Seig & Williams had notice
of the unrecorded bill of sale, in addition to the extract from
the mortgage above set out, which we think is clearly insuffi-
cient.

III. It is true, the mortgage was given to secure an
existing indebtedness, and no extension of the time of pay-
ment was given. But the mortgagees entered

3. ——:
priority pre-
existing debt:
consideration.

immediately into possession of the mortgaged
property, and thereby assumed a new responsibil-
ity which had not before existed; that is, the mortgagees were
bound to account for the property taken possession of, and in
fact the express agreement was that the property should be
sold in the usual course of business. The mortgage was
therefore not executed without any present consideration, and
therefore it is valid, and is entitled to priority over the bill
of sale. *Trustees Iowa College v. Hill*, 12 Iowa, 462;
*Ryan v. Chew*, 13 Id., 589.

The judgment of the circuit court is

AFFIRMED.