WILLIAM MERRILL, Appellant, v. J. L. HOLE, Appellee.

1. **Promissory Note:** FRAUD: INNOCENT PURCHASER: NOTICE: KNOWLEDGE OF AGENT. Where, in an action, brought by an alleged innocent purchaser upon a promissory note, given under such circumstances as to render it void because of fraud, there was evidence tending to show that one B., the plaintiff's indorser, purchased the note as agent for the plaintiff, *held*, that evidence that the transaction in which said note was given was the subject of talk upon the streets of the town where B. lived, and that an article concerning said transaction was published in a newspaper to which B. was a subscriber, was admissible upon the ground that B. was by these circumstances put upon inquiry as to the validity of the note.

2. ———: ———: ———: ———. In view of said evidence of B.'s agency, *held*, further, that evidence that before the purchase of said note by B. he made inquiry as to the validity of another note given in a similar transaction, and purchased at the same time and of the same person, and was informed by the maker that it was good if the payee did as he agreed to, sell the oats and lift the bond, was competent.

3. ———: ———: ———: INSTRUCTIONS TO JURY. The transaction in which said note was given being fraudulent in its inception, *held*, that an instruction to the jury, that notice that the consideration of the note was the sale of oats and a bond, would not be notice of a failure of consideration or of fraud, and that it must appear that the plaintiff had notice that the bond had not been complied with, and had knowledge of fraud in the sale of the oats, was properly refused.

4. ———: ———: ———: ———. The court having instructed the jury to determine the credit each witness was entitled to from all the circumstances appearing on the trial, and there being no occasion for especially emphasizing the rule in regard to verbal admissions, *held*, that instructions asked by the plaintiff correctly expressing such rule was properly refused.

5. ———: ———: ———: ———. The purchase of the note having been made within a few days after the publication of the newspaper article above referred to, *held*, that there was no occasion for an instruction to the jury, that knowledge of defects or want of consideration, or of fraud in the making of a negotiable note, must be such information as will call to the mind the defect or fraud when the note is offered for purchase.

6. **New Trial:** MISCONDUCT OF JURY.  While the jury were deliberating upon their verdict, it was announced by one of their number that a jury in another case had taken a vote in this, and stood eleven for the defendant and one for the plaintiff, and this circumstance was the subject of jest among the jurors; it was also talked in the jury room that it would make no difference to the plaintiff if the jury found in favor of the defendant, as the plaintiff's assignor was holden to him and would have to pay the note. *Held*, that such misconduct on the part of the jury did not entitle the plaintiff to a new trial.

*Appeal from Marshall District Court.*—HON. D. R. HINDMAN, Judge.

THURSDAY, MAY 12, 1892.

ACTION upon what is now commonly known as a "Bohemian oats note." The note was executed July 25, 1887, by the appellee to E. C. Johnson or bearer, for six hundred dollars, payable October 1, 1888, the consideration and circumstances leading to its execution being the same as in the case of *Merrill v. Packer*, 80 Iowa, 542. The note was transferred by delivery to O. L. Binford August 5, 1887, and from him by indorsement to the plaintiff August 8, 1887. There is no question but that these transfers were for value and before the maturity of the note. It is conceded that, under the ruling in *Merrill v. Packer*, this note is void as against public policy. The sole question is whether the plaintiff was an innocent purchaser. The defendant's contention is that the plaintiff knew of the infirmities in the note before he purchased it, and that Mr. Binford purchased it as agent for the plaintiff, with knowledge of the infirmities, and that the plaintiff is chargeable with that knowledge. The plaintiff denies the agency, and denies that either he or Mr. Binford had any knowledge of the character of the note at the time they respectively purchased the same. The case was tried by a jury, and a verdict and judgment rendered for the defendant. The plaintiff appeals.—*Affirmed.*

*H. C. Henderson, J. H. Bradley* and *O. L. Binford,* for appellant.

*J. M. Parker* and *J. L. Carney,* for appellee.

GIVEN, J. I.—The appellant and O. L. Binford having each testified denying any knowledge of the

1. PROMISSORY note: fraud: innocent purchaser·notice: knowledge of agent.

infirmities in the note at the time they purchased the same, the appellee was permitted to introduce testimony, over the appellant's objection, of which the appellant complains. Four witnesses were permitted to testify in substance as follows: That in the summer of 1887, and prior to August 5th, "it was talked in the streets and in certain business places named in Marshalltown that there were parties in that county contracting seed oats called 'Bohemian oats' to farmers at fifteen dollars per bushel, and agreeing to buy all they raised back at ten dollars per bushel next fall, in threshing time." One witness says he heard it over half a dozen times, another that the talk was quite general, and the others that they heard it a great number of times. The appellee was also permitted to introduce in evidence, over the appellant's objection, the following article published in the *Times-Republican* of August 2, 1887, a newspaper of general circulation in Marshall county:

"In these dull and piping times of drought and grumbling, it is refreshing to note what enterprise will accomplish. For instance, an Ohio firm or corporation that last year planted the seeds is this year reaping a bountiful harvest. Having a very superior quality of seed oats, they last year sold two of our farmers— Mr. Chamberlain, of State Center, and Mr. Johnson, of this city—a number of bushels at fifteen dollars per bushel, taking their notes for the purchase price, and giving them what they called a 'bond' to sell twice the

number of bushels from the crop at fifteen dollars per bushel, retaining only the nominal sum of five dollars per bushel as commission. According to the agreement, the Ohio philanthropists returned this year, and carried out their promises, any number of responsible farmers being apparently willing to raise a ten-dollars-a-bushel crop. Messrs. Chamberlain and Rockey's crop of seed oats went off like hot cakes at fifteen dollars per bushel, and it is currently reported that at this price from ten thousand to fifteen thousand dollars' worth of seed oats have been sold in this community, and that good notes to that amount have been taken. One of the pleasant features of this enterprise was the enormous growth insured, as the bond required the Ohio gentlemen, whose object in life is to relieve the mercantile depression, will return, and of necessity sell twice as many seed oats as this, to say nothing of any imported seed they may bring with them. Even the sluggish imagination of a newspaper man cannot fail to grasp the glittering possibilities of this doubling-up process. In a few years Marshall county will be the most delightful farming community on earth, and even our business men will be digging up their back lots and raising oats at the guaranteed price of ten dollars per bushel."

There was testimony tending to support the appellee's claim that Mr. Binford purchased the note for and as agent of the appellant. Upon that theory of the case, the appellant was bound by whatever knowledge Mr. Binford had as to the infirmities in the note, and evidence of such knowledge was admissible. The testimony showed that Mr. Binford resided and was in business in Marshalltown in 1887; that he was in the way to hear the current talks of the town; that he was a reader of the *Times-Republican*, and probably read the article admitted in evidence. The appellant's contention is that there was nothing in the talk or pub-

lication to impart knowledge of infirmities in the note, nor to put a purchaser upon inquiry. It is true this note is not referred to, nor is the transaction with the appellee, but the admissibility of this testimony must be considered in the light of the fact that there was other testimony tending to show that Mr. Binford purchased the note as agent for the appellee, with knowledge that it was given in a Bohemian oats transaction, the same as the Packer note, which he purchased at the same time, and that the talk and publication were under such circumstances as to warrant the inference that they came to Mr. Binford's knowledge before he purchased the note. The rule in this state is that, the circumstances coming to the knowledge of the purchaser before the purchase must be such as to require that he shall in good faith inquire as to the validity of the note, and it is only where the failure to inquire evinces actual bad faith that such notice is sufficient. *Cook v. Weirman*, 51 Iowa, 561; *Pond v. Agricultural Works*, 50 Iowa, 596; *Lake v. Reed*, 29 Iowa, 258. If it be true, as claimed, that Mr. Binford purchased the note as agent for the appellant, knowing that it was a Bohemian oats note, and that this talk among the people and this newspaper article came to his knowledge before the purchase, then it is clear that he was thereby informed as to the plan or scheme under which the oats were sold and the note taken. The features of the scheme that render the transaction void as against public policy are quite fully stated in the newspaper article, and if, with this knowledge, Mr. Binford purchased without inquiry, it would certainly indicate bad faith in the purchase. "But if, from the circumstances attending the transfer, the purchaser must have known that the person offering the note had no right to transfer it, then he is bound to make inquiry, and, if he does not, he takes it at his peril." *Trustees, etc., v. Hill*, 12 Iowa, 462. "To affect a purchaser with notice

of a defense to the note it is not essential that his knowledge be established by direct testimony; it may be shown by circumstances and inference therefrom." *Hoffman v. Leibfarth*, 51 Iowa, 711. We think there was no error in admitting this evidence.

II. Allen Packer and Peter Sell were permitted to testify, over the appellant's objection, that about August 5, 1887, Mr. Binford and one Sherwood came to Packer's house in a buggy. That Mr. Binford said: "Mr. Packer, I came out to see you about this note you gave this man; whether it is good or not;" to which Packer replied: "Yes, it is good if they do as they agreed to,—sell the oats, and lift the bond;" and Sherwood said: "Yes, Mr. Packer, we will do as we agreed to. We will come and sell the oats, and lift the bond." The objection is that this conversation did not relate to the note in suit, but to the Packer note. The transactions were of the same character. The two notes were purchased by Binford of the same person, at the same time and immediately after this conversation. Binford's inquiries were evidently with a view to the purchases, and this evidence was competent as tending to show his knowledge of the character of both notes. Had the purchases been separate in point of time and circumstance, it would be otherwise. *Hawkins v. Wilson*, 71 Iowa, 762, is not in point. Nor is the argument that "it cannot be inferred that one note is bad because another is," where the transactions as to both are connected, as in this case.

III. The appellant complains of the refusal to give his instruction to the effect that knowledge of what the consideration was is not evidence of notice of failure of consideration or fraud; that notice that the consideration of the note was the sale of oats and a bond would not be notice of a failure of consideration or of a fraud;

that it must appear that the plaintiff had notice that the bond had not been complied with, and knowledge of a fraud in the sale of the oats. Daniel, Negotiable Instruments, section 797, cited, is not applicable, as the consideration is not recited in this note. It is not by what appears in the note that the appellee seeks to charge the appellant with notice of its infirmities, but by his knowledge of the illegal transaction in which it was given. There is no claim that mere notice that the consideration was the sale of oats and a bond would be notice of want or failure of consideration, but it is that notice of this kind of sale and bond would be, because of their being illegal and void.

IV. An instruction expressing correctly the familiar rules applicable to verbal admissions was refused. The court charged the jury that they were to determine from all the circumstances appearing on the trial the credit each witness was entitled to, and that the evidence consisted of all the material facts and circumstances proven in the case, and the reasonable inferences drawn therefrom, according to the common experience and observation of mankind. There was no occasion for especially emphasizing the rule in regard to verbal admissions, and the instructions given were sufficiently specific on that subject.

V. The appellant complains of the refusal to give the following instructions:

"(7) Knowledge of the defects, or want of consideration, or of fraud in the making of a negotiable note must be such information as will call to the mind the defect or fraud when the note is offered for purchase. This is with reference to the article in the paper of August 2, 1887, and other evidence of like character. If the article did not amount to such knowledge as would inform the person seeing the note of the defects of this note, or of the want of

consideration, or cause such knowledge to be suggested to the mind when the note was presented, it would not amount to notice of any infirmity, even though the purchaser might have read the article."

There was nothing in the case to call for such an instruction. The entire transaction had occurred within a period of fifteen days. The note was executed July 25, the newspaper publication August 2, and the transfers of the note August 5 and 8. There was nothing to show, and no reason to infer, that any information that had come to the purchaser concerning the note was forgotten or out of mind at the time of the purchase. The newspaper article did show that which would inform any person who read it and saw the note, knowing that it was a Bohemian oats note, that it was void.

VI. The court instructed "that an innocent holder of a negotiable promissory note, as meant in these instructions, is one who in good faith buys the same for a valuable consideration, before its maturity, from one having the right to sell and deliver the same, and without his (the buyer) having notice or knowledge of any lawful defenses the maker may have against it." The appellant contends that he had a right to purchase "from one having the apparent right to sell," and that the omission of the word "apparent" was prejudicial. The language used is evidently with reference to the ownership of the note; and, as there was no question as to the ownership, the omission was without prejudice. There was some evidence from which it was claimed that the transfer of the note to the appellant was not until after April 17, 1888; hence there was no error in instructing the jury as to the effect of chapter 78, Acts of Twenty-second General Assembly. It is complained that certain other paragraphs of the charge have no basis in the evidence. We think, upon exami-

nation of the evidence and these paragraphs, that they were called for, and are applicable to the case.

VII.   One ground of the appellant's motion for a new trial is misconduct of the jury.   It appears that, while this jury were deliberating, it was stated by some one that a jury then deliberating in another case had taken a vote in this, and stood eleven for the defendant and one for the plaintiff; that there was some jesting about it; and that it was stated that that should not make any difference,—that they should decide this case upon the evidence.   The action of the other jury does not seem to have been seriously mentioned or considered.   One juror states as follows:   "It was also talked over that Binford was holden to Merrill and that Merrill wouldn't lose anything, and Binford would have to pay it,—the note,—and therefore it would make no difference to Merrill that we decided, or should decide, in favor of Hole."   Binford and Merrill were both examined as witnesses, and it was proper for the jury to consider their interest in the result of the suit in weighing their testimony.   The showing fails to satisfy us that this subject was mentioned in any other connection.   The instructions were plain, and we are not warranted in concluding upon the showing made that the jury disregarded them.

6. NEW trial: misconduct of jury.

Our conclusion upon the whole record is that the judgment of the district court should be AFFIRMED.