FIRST NATIONAL BANK OF CHELSEA *vs.* PRIAM B. GOODSELL & another.

At the trial of an action on a bill of exchange, brought by indorsees thereof against the acceptor, to which the defence is that the payee obtained the acceptance by fraud and the other parties took the bill with knowledge thereof, the acceptor, for the purpose of show- ing a course of business between the indorsees and indorser by which the former were in the habit of taking negotiable paper from the latter, knowing that he was engaged in buying tainted notes and passing them to third parties so as to give a good title, may introduce evidence to show what other paper the indorsees had of the indorser, and what business they had done with him, before taking the bill in suit.

CONTRACT against Priam B. Goodsell and Samuel A. Way, on a bill of exchange drawn by Leon Chautard, payable at sight to his own order, on Goodsell, accepted by Goodsell, and bearing the indorsements of Chautard and Peter B. Rickard and a guar- anty of payment by Way. Goodsell answered that his accept- ance was obtained by fraud and without consideration, and that the plaintiffs took the bill with knowledge thereof. Way's an- swer was a general denial.

At the trial in the superior court, before *Reed*, J., the plaintiffs put the bill in evidence, and rested their case. Goodsell intro-

duced evidence tending to show that the bill was obtained from him by Chautard through fraud and without consideration, and was transferred successively to Rickard and Way with knowledge on the part of, both that it was invalid in its inception.

Goodsell then called one Stebbins, president of the plaintiff bank, who testified that he acted solely for and attended to the matters of the plaintiffs ; that he took the bill by discount, from Way, with some other bills at the same time ; that he had the whole charge of the matter of the bill ; " that, not knowing the parties to the bill, he asked Way to guarantee it, and he did so ; that he made no inquiries about it or the parties, but took it on the guaranty of Way alone ; that after it was due he called upon Way, and asked him to collect it out of the other parties, and said and did nothing more, and carried it to counsel for suit ; that he knew Way to be perfectly good, but did not ask Way for, and Way did not give him, the amount of the bill or anything else for it, or claim that he had any defence to it on his part ; that the bill was not taken up by Way, nor any other put in its place ; that he did not tell Way, when the bill was offered, that it was tainted all over, or anything of the kind, in words or substance ; that he had an interview with Goodsell, at a time and place named, on State Street, afterwards, but did not tell him in words or substance that this was so, and that he had so told Way ; that he had an interview with Goodsell in New York afterwards, but did not tell him then and there that the bill did not lie under protest five minutes, either in words or substance ; " and the witness assumed to state what was said at those interviews. Goodsell was afterwards called, and testified " that Stebbins did tell him at the time and place named, on State Street, that he took the bill with twenty other bills at the same time, and told Way when he looked at the bill that it was tainted all over, and got him to guarantee this when he did not do so with the other bills taken at the time ; that in New York, at the time and place stated, he spoke to Stebbins again about opening an account at his bank, and alluded to the bill and the plaintiffs' calling on the last party first ; and that Stebbins said the bill did not lie under protest five minutes."

Stebbins being an adverse witness, the judge permitted Good-sell to put leading questions to him. Goodsell contended that he could prove, or proposed to prove, " that Way was engaged and in the habit of buying tainted and invalid notes, and in passing them off so as to get them into the hands of other parties, to make a good title if possible in their hands, and that Stebbins was the party whom he used for this purpose;" and he asked Stebbins what other notes he had had of Way, and what business he had done with him, before taking this bill. The plaintiffs ob-jected; and Goodsell stated that he proposed "to show by the course of dealing between the parties, and their other transac-tions and their relations to each other, that there was an under-standing and an agreement between them that Stebbins, acting as president for the plaintiffs, should take paper of Way without asking any questions, knowing that he was good; and that he was engaged and in the habit of buying tainted and invalid notes, and desired to pass them off to a third party, so as to give a bet-ter title; and that he was only required to guarantee or indorse them, and they would collect out of the other parties; that the witness was adverse; and that the fact could only be proved by proving their relations and course of dealing in that respect, and by inferences from facts, while perhaps the witness would deny the direct question." The judge excluded the evidence, although Goodsell also stated that it was offered as part of a course of in-quiry into the business relations of the parties.

At the close of Goodsell's evidence, the plaintiffs, without say-ing, and declining to say on inquiry from Goodsell, whether they rested their case there or proposed to put in evidence in rebuttal, asked the judge to rule that no defence had been made out Goodsell, on being called upon by the judge, contended that the plaintiffs must first state whether they rested their case there or proposed to put in more evidence in rebuttal; and said that, when the evidence was all in, he wished to argue the questions of fact to the jury, and have the case submitted to them with such instruc-tions as the judge might give, and that he should then have some prayers for instructions which he should ask to be given to the jury, but that he did not wish to discuss further the law or the

facts then, nor until the case was all in on the plaintiffs' part. The judge thereupon, without requiring the plaintiffs first to rest their case there, ruled that there was no evidence for the jury, and that Goodsell's evidence did not tend to establish any defence, and directed a verdict for the plaintiffs. The defendant Goodsell alleged exceptions. Other points raised in the bill of exceptions are not now material.

*A. A. Ranney,* for Goodsell.

*J. P. Healy,* for the plaintiffs.

COLT, J. The defendant Goodsell must show, as one step in his defence, want of consideration between the original parties to the acceptance. Upon its appearing that the bill was discounted in the usual manner at the plaintiff bank before maturity, it must further be made to appear that the plaintiffs and the prior indorsers took it in bad faith, and with notice, actual or constructive, of the original infirmity. If upon both these points he offered evidence sufficient in law to justify a finding in his favor, the case should have been submitted to the jury. If he failed in either, then at the close of his evidence it was proper for the court, on the plaintiffs' motion, or without motion, and without requiring the plaintiffs to say whether they proposed to put in any evidence in reply, to take the case from the jury and direct a verdict for the plaintiffs. *Goodman* v. *Simonds,* 20 How. 343. Story on Promissory Notes, (4th ed.) §§ 190, 197, and note.

Upon a careful examination of this record, we think there was evidence for the jury admitted, or offered and excluded, tending to establish both branches of the defendants' case. The doubt is, as to the evidence offered to defeat the plaintiffs' title as *bonâ fide* holders. This evidence comes wholly from the president of the bank. He was called as a witness by Goodsell only. He testified that, acting for the bank, he took the bill for discount, and, not knowing the parties, he asked Way, from whom he received it, to guarantee it ; that he made no inquiries about it, or the parties, but took it on the guaranty of Way alone, whom he knew to be perfectly good. This was all the evidence, except what appears upon the face of the paper itself, relating to the circumstances under which this particular bill was discounted.

It is true that under the provisions of the St. of 1869, *c.* 425, the witness was asked if he had made statements at other times inconsistent with his testimony, and, upon his denial, evidence of such statements, made after the bill was discounted, was produced, to the effect that he knew when he took the bill that it was tainted. But these naked declarations at other times are admitted only as one mode, under the statutes, of discrediting the witness, to be considered by the jury only in weighing his testimony, and not as substantive evidence of the truth of the facts stated.

Goodsell claimed the right to show, by this witness, the course of dealing between the parties in other similar transactions, for the purpose of proving that there was an understanding and agreement between the president of the bank and Way, that the bank should take paper of Way, knowing that he was engaged in buying tainted and invalid notes and passing them to a third party so as to give a good title. The witness was asked what other notes he had taken of Way and what business he had done with him before taking this bill; but the court excluded the evidence, although stated to be offered as part only in a course of inquiry into the business relations of the parties. There is some color for the suggestion that the judge by this ruling did not in fact intend to exclude evidence properly presented of the general course of business between the parties in these respects, but only refused to allow Goodsell to attempt to establish a fact which must have been within the direct knowledge of a witness called by him, by a cross-examination of that witness. If this were so, then as the right of a party to put leading questions, or to cross-examine his own witness, is a matter resting in the discretion of the court, no exception would lie to the ruling. But upon the whole we think this is not the true construction of this record. The ruling of the court prevented Goodsell from proving by any evidence the previous course of dealing stated, without reference to the form in which the question was put.

It is well settled that such general course of dealing may be shown, as giving character to a particular transaction within its scope, and as affording an inference that a bill discounted within it was so discounted with constructive notice of any exist-

ing infirmity. The evidence offered under this head should have been admitted. *Merriam* v. *Granite Bank*, 8 Gray, 254.

Many exceptions were taken to the exclusion of evidence offered to prove original want of consideration, but they need not now be considered, and may never again arise or become material.

*Exceptions sustained.*