C. G. FARTHING v. J. H. DARK.

*Negotiable Instruments—Notice of Equities—Inadvertence of the Court—Plan of Payment—Evidence.*

1. A negotiable note, payable at the *Durham Fence Factory,* or the *office of W., W. & Co.,* does not, upon its face, show a circumstance calculated to excite suspicion of a purchaser for value before it was due, even though he knew of no such fence factory in operation there, the other place of payment being well known, and such purchaser was not bound by the equities existing between the ·original parties.

2. In the former decision of this case (109 N. C., 291), this Court was not advertent to the fact that there was an alternative description of the place of payment in the note, and was not warranted in the assumption that the plaintiff knew the place named in the note had no existence.

3. The fact that the negotiator of the note was a stranger, and sold it· and others for considerably less than their face value, and the other circumstances relied upon by the defendant, were not so suspicious as to put the onus of further inquiry upon the purchaser.

This was a PETITION of the plaintiff to rehear this case, as reported in 109 N. C., 291.

*Messrs. J. S. Manning* and *W. W. Fuller,* for plaintiff.
*Messrs. J. W. Graham, T. B. Womack* and *Junius Parker,* for defendant.

AVERY, J.: The note assigned for value and before maturity was, upon its face, made "negotiable and payable at Durham Fence Factory, *or office of Wortham, Warren & Co. Planing Mills.*" The plaintiff testified that when he bought the note he knew there was no factory in Durham "called the Durham Fence Factory;" but neither plaintiff, defendant, nor any other witness, disputed the fact stated by the witness Wortham, as well as Justice, who was introduced by

the defendànt, that there was a place of business in the town well known as the "office of Wortham & Co." If, therefore, we concede the correctness of the legal proposition laid down in the former opinion in this case (109 N. C., 291), the Court was not advertent to the alternative description of the place of payment, and the mere prefixing of another description, which might be interpreted either as the designation of a distinct place, or a different name for the office of Wortham, Warren & Co., was not in any view of the law a circumstance calculated to excite suspicion and stimulate inquiry as to the character of the note. A more careful examination of the testimony shows, therefore, that we were not warranted in assuming as the basis of the legal conclusion reached, that the plaintiff knew the place named in the note had "no existence." He did know that Wortham, Warren & Co. had planing mills and an office in the town, and the note being offered before maturity, there was no reason why he should have taken the trouble to ascertain whether the machinery for making fences was being operated, or whether there was an agênt on the ground to fill orders. If he had prosecuted his inquiries and ascertained that the machinery bought for that purpose was still outside of the building of Wortham, Warren & Co., not adjusted for working, such information would not have been sufficient to require inquiry as to the good faith of Pallett & Co. If, owing to some mis-understanding, the machinery should have been moved and the fence made and furnished elsewhere, the note might still be made payable, when it was the original purpose to manufacture the fence, and without any fraudulent purpose existing at the time.

But we must be understood as adhering to the principle laid down in the former opinion, and as modifying the ruling heretofore made on the ground only of inadvertently mis-taking the facts. Upon more mature consideration we are not prepared to dispute the correctness of the legal proposi-

tions laid down by the Court below without regard to the plaintiff's knowledge of the existence or non-existence of the place of payment at the time of purchase. The purchaser might well conclude that, though the office and plant might not then have been established, it would be before the maturity of the note. The production of the note was *prima facie* evidence of present ownership, and it being admitted that it was bought for $100, though less than its face value, $125, and before maturity, in the absence of actual notice of fraud in the factum at the time of assignment, the purchaser took it discharged of all equities in favor of the maker. 1 Dan. Neg. Inst., sections 770, 782, 789 and 789*a*; *R. R.* v. *Schult*, 103 U. S., 145; *Tredwell* v. *Blount*, 86 N. C., 33; *Campbell* v. *McCormac*, 90 N. C., 491; *Jackson* v. *Love*, 82 N. C., 405. There is no testimony whatever tending to show actual and explicit notice, at the time of the transfer, of fraud on the part of the payee when the note was executed, and the circumstances relied on were not s〉 suspicious as to place the onus on the purchaser of extending his inquiries beyond the solvency of the maker. In *Hulbert* v. *Douglass*, 94 N. C., 122, cited to sustain the opinion of the Court, it appears to have been found as a fact that the plaintiff did not purchase the note "for value and in good faith before it was due and without notice of any defence, set-off or equities in favor of defendant Douglass, as set forth in his answer," and it did not appear that they were not warranted in so finding.

There was not evidence sufficient to constitute this case an exception to the general rule and shift the burden of proof upon the plaintiff as purchaser of the note before maturity.

On a review of the exceptions, we find no error in the rulings of the Court below.

Petition Allowed.