LOFTIN v. HILL.

(Filed October 7, 1902.)

1. NEGOTIABLE INSTRUMENTS—*Bills and Notes—Evidence.*

In this action on a promissory note, assigned before maturity, the evidence is sufficient to be submitted to the jury on the question whether the assignee was a *bona fide* purchaser without notice of fraud in the execution of the note.

2. NEGOTIABLE INSTRUMENTS—*Bills and Notes—Evidence— Contracts.*

In an action on a note by the assignee, there being some evidence that the assignee was not a *bona fide* purchaser without notice, a contemporaneous contract with the execution of the note is competent evidence on the question of consideration.

ACTION by S. H. Loftin and others against R. F. Hill, heard by Judge *E. W. Timberlake* and a jury, at March Term, 1902, of the Superior Court of LENOIR County. From a judgment for the plaintiffs, the defendant appealed.

LOFTIN *v.* HILL.

No counsel for the plaintiffs.
*N. J. Rouse,* for the defendant.

MONTGOMERY, J. The plaintiff is the assignee, before maturity, of a plain promissory note for the amount of $100, payable to W. T. Magee & Co. The defendant, the maker, in his defence pleaded fraud in the treaty leading up to the execution of the note, failure of consideration, equities arising out of a contemporaneous agreement between the maker and the payee, and that the plaintiff had, or ought to have had, notice of all these matters; and he further pleaded notice on the assignee's part that the payees were doing a fraudulent business, and that he had knowledge of such facts, that his action in taking the note amounted to bad faith, and that he did not take the note in good faith and for value.

On the trial (an appeal from a Justice's Court), the plaintiff, as a witness in his own behalf, testified that he bought the note of W. T. Magee before maturity, and for value, and without any knowledge of any fraud; that he paid $30 for it; that Magee was a stranger in the community, and asked the witness, before taking the note from Hill, the defendant, as to Hill's financial standing; and that he told him that the defendant was solvent, and that his note would be good. The counsel for the defendant asked the witness "If, on Saturday next preceding the purchase by witness of defendant's note in controversy, one J. K. Aldridge did not ask the witness (plaintiff) whether he had purchased from said Magee a note of $100, executed by said Aldridge to said Magee & Co., and upon receiving from the witness an affirmative reply, if said Aldridge did not tell witness that said Magee & Co. were doing a fraudulent business, and that he held a contract against said note, and if the said Aldridge did not then show the witness (plaintiff) the said written contract?"

Upon the objection of the plaintiff, his Honor excluded the evidence. The defendant, on being examined as a witness for himself, said:

"I am the defendant in this action, and signed the note in controversy. W. T. Magee came to my home, about five miles from Kinston, on Monday morning about 10 o'clock. After some negotiation, I signed the note, and at the same time we both signed a contract, upon which the note was based. Soon after Magee left, I began to think about the matter, and became convinced that I had been 'picked up,' and immediately hitched my horse and drove to Kinston, arriving there about 1 o'clock p. m. of the same day of the execution of the note. After a few moments consultation with my attorney, I went to the bank of Kinston and learned that the note had not been offered there. I then went to the plaintiff's bank and found that he was not in. I then went out, and soon found the plaintiff Loftin on the street, and asked him if he had bought my note. He said he had. I said, Mr. Loftin, I have been 'picked up,' and want to get my note. I asked him what he paid for it, but he would not tell me. I then told him I had been defrauded and wanted to get my note in, and would pay him whatever he paid for it and something more. He said he would not take it; that he bought it to make money and would have to have what it called for. I then left him. I have never received any fertilizer distributors or other benefits under said contract, and have never heard from Magee since, and have investigated and found that there is no such concern as the Charlotte Plow Co."

The defendant then offered to introduce the contract executed by himself and Magee contemporaneously with the note, but upon the objection of the plaintiff, his Honor refused to admit it. The contract, in substance, provided for the lease for a term of years of the exclusive right to sell a patent fertilizer distributor—the Fuller Fertilizer Distrib-

utor.   It was stipulated that the distributors would be fur-
nished during the lease through the Charlotte Plow Co., or
some other manufactory of Magee's selection.   The lessee,
the defendant, was to sell the distributors within the terri-
tory allotted to him, and to pay Magee a part of the profits,
and to execute his note for $100 as a security for the pay-
ment of the profits.   It was further agreed in the contract
that "if the parties of the second part shall fail to pay said
note at maturity, then the said party of the first part shall,
at his option, have the right to cancel this contract and take
back the sample distributor, but if at the time the party of the
first part shall decide to cancel the said contract, one-half of
the profits on the distributors sold do not equal the amount
of the said note, then the party of the first part shall surren-
der to the parties of the second part the note above referred
to, upon the payment to the party of the first part by the
parties of the second part of one-half of the profits on the dis-
tributors sold up to the said time."

The defendant then offered to prove by the witness J. K.
Aldridge "that on Saturday before the plaintiff purchased
defendant Hill's note, the said Aldridge saw the plaintiff and
told him he had heard that he had bought a note which he
(Aldridge) had executed to Magee & Co.; that the plaintiff
told him he had.   Thereupon Aldridge told the plaintiff that
Magee & Co. were doing a fraudulent business and defraud-
ing the people of Lenoir County; that he (Aldridge) had a
written contract against the note, which contract he showed
to plaintiff, and he read it," but, on the objection of the
plaintiff, the Court refused to allow the evidence.

The defendant then tendered the following issue: "Did the
plaintiff take the note sued on in good faith and for value?"
and the Court declined it, and submitted the usual issue in
debt, and instructed the jury that if they believed the evidence
to answer the issue for the plaintiff.   The defendant excepted

to each ruling of his Honor, all and each of them bearing upon the same question. And we think the exceptions were well taken.

It is too well settled in our State to need the citation of precedents that the holder of a negotiable note is presumed to be the proper owner thereof, and that he had received it before it became due for a valuable consideration in usual course of business, and that if there be fraud or illegality in the inception of it, the burden is upon the maker to show it. But that presumption is only *prima facie* evidence of such ownership, and may be rebutted or explained.

The defendant insists that he introduced evidence, and also offered evidence which was rejected erroneously by the Court, tending to rebut that presumption by showing that the plaintiff was not a *bona fide* purchaser for value and without notice, and that the Court erred in rejecting the proffered evidence, and also in refusing to submit an issue upon his contentions, and in instructing the jury that if they believe the evidence they should answer the issues in favor of the plaintiff. We are strongly inclined to the view that, outside the rejected evidence, the instruction to the jury was erroneous.

Magee, the payee of the note, was a stranger in the community, and was known to the plaintiff to be doing some kind of a business with the people in Lenoir. Before he took the note from the defendant, the plaintiff talked the matter over with Magee, and told him that the defendant was solvent, and his note *would* be good. The defendant lived five miles in the country from Kinston, and at ten o'clock in the morning executed the note. Within four hours after that time Magee returned to Kinston, sold the note to the plaintiff for $30, left the town and has never been heard of since. Also, the plaintiff, when asked by the defendant what he paid for the note, refused to tell him. The whole conduct of the plaintiff

was so utterly repugnant to every idea of fair and open dealing as to shock the sensibilities of the ordinary man, and are so suspicious as to place the onus on him of extending his enquiries in reference to the circumstance in which this note was given. He had knowledge of such facts and circumstances, those which we have recited, which made it incumbent on him to inquire as to the character of the note which he purchased; and that being so, he would be affected with knowledge of all that the enquiry would disclose. *Bunting v. Ricks,* 22 N. C., 130, 32 Am. Dec., 699; *Hulbert v. Douglas,* 94 N. C., 122.

It follows from what we have said that the Judge ought to have permitted the contract between defendant and Magee to have been read in evidence. We further think that the evidence of Aldridge was competent, as we have said this man Magee was a stranger, he was known to the defendant as engaged in some kind of business with the people of Lenoir, and Aldridge offered to prove that before the plaintiff bought the note he had been told by Aldridge that Magee was engaged in a fraudulent business, and had defrauded him, and showed him the evidence of it in writing. The plaintiff's counsel, in his contention that the evidence of Alridge was not competent, cited, among other cases, three from our own Reports. *Holmesly v. Hogue,* 47 N. C., 393; *Withrow v. Biggerstaff,* 87 N. C., 176, and *Winborne v. Lassiter,* 89 N. C., 1. We think the law of those cases does not apply to the facts of this case. In the first of them, *Holmesly v. Hogue,* it being an action by a creditor to establish the fraudulency of a certain conveyance made by the debtor defendant, it was held that a fraudulent transfer of other property which had been made by the defendant to another person could not be offered as evidence to prove the fraud under investigation; and the two other cases involve the same rule of evidence. In our case, the question is whether in a suit by the assignee of a

note against the maker, evidence tending to show that the payee, a stranger in the community and known to the assignee to be engaged in some kind of business, was engaged in a fraudulent business, and had defrauded another person whose note he had taken in the course of that business, and that those facts had been made known to the assignee before he purchased the note in suit, is admissible to show circumstances calculated to attract the assignee's notice, put him on his guard and stimulate inquiry as to the character of the note.

There are facts in this case not found in *Farthing v. Dark,* 111 N. C., 243, and the decision there in upholding in its integrity the law in reference to the rights of the holders of negotiable notes is the extreme limit of that doctrine. We can go no further with it.

New Trial.