(90 App. Div. 233.)

ROTHSCHILD v. ALLEN et al.

(Supreme Court, Appellate Division, First Department. January 22, 1904.)

1. BROKER AND CUSTOMER—RELATIONSHIP—SALES ON MARGIN.
    Where brokers sell stock to a customer on margin, the legal title to the stock is in the purchaser, and the brokers are the pledgees thereof for the repayment of all advances made by them in connection with the transaction.

2. SAME—FAILURE TO DELIVER—CONVERSION.
    Where brokers sell stock to a customer on margin, their failure to deliver the stock on demand by the customer operates as a conversion thereof.

3. SAME.
    The fact that those to whom stock has been pledged by a broker, who had sold the stock on margin to a customer, exercised their legal right in selling the stock on suspension of business by the broker, does not relieve the broker from his obligation to deliver the stock on demand therefor by the customer.

4. SAME—ASSIGNMENT OF STOCK—CONVERSION—ACTION.
    Where an assignment is of the right, title, and interest of the assignor in and to a specified number of shares of stock, being the same that was sold to the assignor on margin by a broker, who had converted the stock before the assignment, the assignment carries with it the right of action for the conversion.

5. SAME—SALE BY PLEDGEE—NOTICE TO PLEDGOR.
    Where stock is bought of brokers on margin, the failure of the purchaser or pledgor to put on further margins, after notice to do so, does not excuse the giving to him of reasonable notice of the time and place of a subsequent sale thereof by the pledgee.

Appeal from Trial Term.

Action by Louis Rothschild against Henry Allen and another. From a judgment for plaintiff, and an order denying a motion for a new trial, defendants appeal. Affirmed.

Argued before VAN BRUNT, P. J., and HATCH, PATTERSON, INGRAHAM, and LAUGHLIN, JJ.

John J. Crawford, for appellants.
William J. Barr, for respondent.

HATCH, J. This action is brought to recover damages for a claimed tortious act of the defendants in converting certain stocks, the property of plaintiff's assignor, Jacob M. Frank. It is averred in the complaint and admitted in the answer that the defendants were stockbrokers, and, as such, bought upon margin for Frank 200 shares of Anaconda Mining Company and 200 shares of American Smelting & Refining Company stock, upon which Frank had deposited $5,000 with the defendants to margin the same. There had been other transactions between the parties not material to be now considered. It was agreed by and between the defendants and Frank that the stock which had been purchased, and which remained in the hands of the defendants, should not be sold unless Frank's margin should be exhausted or become insufficient, and not then unless they should de-

¶ 1. See Brokers, vol. 8, Cent. Dig. §§ 19, 20, 27.

mand of him that he give increased security, or take the stocks and pay the balance due therefor, and, if sold, that the defendants should give him due notice of the time and place of such sale and due opportunity to make good his margin.    The defendants pledged the stocks purchased for Frank with the Bank of Montreal, the Bank of the City of New York, and Talbot J. Taylor & Co. for loans to them. It does not appear from the evidence what the agreement of pledge of these stocks was, but upon the trial the defendants were asked what the arrangement was, objection was interposed thereto, the court excluded the same, and plaintiff excepted.    We think this ruling was error, as the defendants were entitled to show, if such was the fact, that the agreement of pledge was of such a character that Frank could at any time, upon paying the amount unpaid upon the purchase price of the stocks, obtain the same from the pledgee.    In the disposition, however, which we make of this appeal, such error is unavailing, for we assume as a fact that the agreement of pledge protected Frank's right to the delivery of the stocks at any time when he should make payment of the purchase price, and this assumption secures to the defendants all possible benefit which they could derive had the entire agreement of pledge been given in evidence.    On the 18th day of December, 1899, the defendants' firm suspended business, and on that day the pledgees of the stock sold the same, and appropriated the money therefor to reimburse them for loans which they had made to the defendants.    No notice of the time and place of the sale was given to Frank, nor was he given a reasonable opportunity to protect his interest by further margins, if such act upon his part would have availed to prevent a sale.    Frank, having learned of the suspension, went to the office of the defendants, demanded his stocks, and was informed that the firm had suspended business, and that they could not make delivery of the same.    On the 5th of January following, he made another demand for their delivery.    While there was some conflict in the evidence as to whether a demand was made by Frank of the defendants for the delivery of the stock, the evidence warranted the jury in finding that such demand was made.    Under date of December 18, 1899, the defendants sent to Frank three letters, signed by the defendants, "per B.," stating in each, "We have sold for your account and risk;" and then follows in each one respectively the name of the pledgees of the stock and the number of shares respectively sold of each.    These notices reached Frank on the 20th and 21st of December.    Frank subsequently assigned the shares of stock to the plaintiff herein.

The legal rules which govern the respective rights of the parties in this transaction have been the subject of repeated adjudication, and the law bearing thereon is fairly well settled.    The relation which is established between the broker and a customer who buys stocks upon margin is that of pledgor and pledgee.    The legal title to the stocks is in the purchaser, and the brokers are the pledgees of the same for the repayment of all advances made by them in connection with the transaction.    Markham v. Jaudon, 41 N. Y. 235; Baker v. Drake, 66 N. Y. 518, 23 Am. Rep. 80; Gillett v. Whiting, 120 N. Y. 402, 24 N. E. 790.    Under such relation the broker has the right to pledge the

stocks and obtain from the pledgee advances of money thereon, and
the latter, by such transaction, obtains a good lien thereon which he
may enforce by a sale of the pledge without notice to the owner of
the legal title, and without incurring any liability to him therefor, or
to the broker making the pledge. The duty and obligation which the
broker owes to his customer, however, is quite different. It was said
by this court, in speaking of such obligation:

"The plaintiffs might take title to the securities in their own name, and
were not bound to retain or deliver the identical securities purchased for
the defendant. Their duty was to keep on hand, or under their control,
either the securities of the defendant or a like kind and amount of securi-
ties, and to have them in such situation that the defendant, by paying the
amount due by him thereon, could at any time obtain them. This was what
the plaintiffs agreed to do, and, so long as they did this, the fact that they
used the securities while in their possession, awaiting redemption by the
defendant, would not amount to a conversion thereof."

And further:

"Any disposition of the defendant's securities by the plaintiffs which
would deprive him of his right to an immediate possession thereof, upon pay-
ment or tender of the indebtedness by him to the plaintiffs on account of
such securities, would amount to a conversion thereof. A sale or loan would
do this, no securities of a like kind and amount being kept in their place,
because the securities would be gone and could not be delivered to the de-
fendant."

Douglas v. Carpenter, 17 App. Div. 329, 45 N. Y. Supp. 219.

While, therefore, the defendants herein had authority to pledge
the securities to secure loans to them, yet they were bound, in making
use of the securities, to at all times during the life of the transac-
tion keep themselves in readiness to deliver such securities, or an
equivalent number of the same kind of shares, to Frank whenever
he should offer to pay the unpaid portion of the purchase price. If
the stocks were so pledged that delivery from the pledgee could be
had when demanded by Frank upon payment by him of the unpaid
purchase price, it would answer the obligation assumed by the bro-
ker, even though he did not have other shares of the same stock
upon hand to deliver, as all Frank was entitled to was the delivery
of the shares to which he was entitled upon payment, and, if he could
obtain them by payment, conversion of the stock by the broker could
not be predicated of the transaction. In the numerous cases which
have arisen, the sale of the stock which has been held to be a con-
version was usually by the affirmative act of the broker. In the
present case the sale was not in fact made by the broker, but by the
pledgee of the stock. It has been said that under such circumstan-
ces there was no conversion of the stock by the broker, as he was
not guilty of conversion in pledging the stock, and took no affirm-
ative steps resulting in its sale; that, therefore, his act constituted
only a breach of the contract which he had made, but did not con-
stitute a conversion of the stock by him. We think this contention
cannot be supported. The acts of the defendants herein placed the
stock beyond their power to deliver the same when called upon so
to do, and they did not keep on hand an equivalent number of other
shares to meet the demand. They could only make use of the stock

by certainly guarantying their ability to procure and deliver when called upon by the owner so to do. When they pledged the stock to secure their own loans, they did so at the peril of being able to deliver the same if delivery was demanded by the owner and he tendered payment. They were not authorized to pledge it, except upon that condition. It was their act which placed it beyond their power to deliver this stock or its equivalent when Frank made demand upon them so to do. When that demand was made, they were without ability to perform, and, as they had not complied with the conditions which alone gave them the right to pledge the stock, the resultant sale of the same became by operation of law their act, and such act was as to them, and between them and Frank, a conversion of his property. In Lawrence v. Maxwell, 53 N. Y. 19, the action was for conversion of certificates of stock delivered by the customer to margin a gold transaction by a broker. The stocks were hypothecated by the broker with the knowledge of the customer. Thereafter the plaintiff tendered to the broker the amount secured by the delivery of the stock and demanded its return, and the broker refused, from inability to comply with the demand. Judge Allen, in delivering the opinion of the court upon this subject, said:

"Conceding the right to use the stock pledged, by way of hypothecation or otherwise, as claimed, and that it was, at the time of the tender and demand, lawfully out of the actual possession of the defendant, it was his duty at once to regain the possession and restore the same to the plaintiff. A neglect or refusal to do so gave to the plaintiff an action as for a conversion of the property. Franklin v. Neate, 13 M. & W. 431. It is immaterial whether the stock was hypothecated by the defendant upon a loan of money for the benefit of plaintiff's transaction or for his own purposes. In either case the duty and the obligation were the same. * * * If the pledgee may use the thing pledged, he must do so at his peril, and so use it as not to affect the ultimate right and ability of the pledgor to have it again, when the lien shall be discharged.

It may be further said that this question was not raised or in any wise presented upon the trial. Indeed, the proof shows that plaintiff regarded the act of sale by the pledgees as their act, for, in the notice which they gave, the statement was, "We have sold for your account and risk," and no claim was made that they were not chargeable with the legal results which flowed from that transaction, or but that it should be considered as their affirmative act; and, as the question was not raised upon the trial, it is not available to be considered upon this appeal. That the pledgees exercised a legal right when they sold the stock does not answer to relieve the defendants from their obligation to deliver the same when demand was made upon them for delivery. We are of opinion, therefore, that the failure to deliver the stock when demand was made upon them so to do operated as a conversion of the same, and that therefore this action can be maintained.

It is said, however, that there was no assignment by Frank to the plaintiff of the cause of action arising out of the conversion. The assignment in form is of the right, title, and interest of Frank in and to a specified number of shares of stock, which is the stock which was sold. No mention therein is made of an assignment of the

cause of action, and it is claimed, therefore, that the cause of action did not pass. Such point was raised, as the defendants moved to dismiss upon that ground. It was said by Judge Allen in Sherman. v. Elder, 24 N. Y. 381:

"An assignment of the property by name, after conversion, carries the right of action for the conversion. 'Ut res magis valeat quam pereat.' Courts will give effect to a transaction if possible, and so construe an instrument as to give effect to the intent of the parties."

See, also, Fitch v. Rathbun, 61 N. Y. 579. The court correctly charged the jury that even though there was failure, after notice, to put up the margin, it would not excuse the giving of reasonable notice of the time and place of the sale. There is no evidence in the case which would justify a finding that any notice was given of the time and place of sale. The defendants did not pretend that they gave any notice, nor does the evidence show that a reasonable opportunity was given to deposit further margins. On the contrary, the evidence is satisfactory to show that no such opportunity was given, and testimony which tends otherwise is not sufficient to discredit it. The court submitted to the jury the proper rule of damage, and the amount of the verdict finds support in the evidence.

These views lead us to the conclusion that the judgment and order should be affirmed, with costs. All concur.