BENJAMIN R. KITTREDGE, Respondent, v. ARTHUR E. GRANNIS et al., Defendants, and ROBERT C. LAWRENCE, Appellant.

Conversion — brokers — delivery of negotiable bonds to stock-brokers presumptively for present or future sale, as collateral, or for safekeeping — transfer of bonds to another firm for value and sale by latter — action by owner of bonds against latter firm to recover as for money had and received on ground transfer was not in due course — burden of proof — hearsay testimony — exception to rule — reception against one of declarations of another who is dead — partners presumed to have knowledge of entries in firm books in regular course of business — conversion as matter of law — sale in bad faith — entries in books against interest properly received in evidence — evidence that defendant knew of custom of plaintiff's brokers to convert securities of their customers and misappropriate proceeds competent on question whether defendant became holder in due course.

1. Negotiable bonds of the plaintiff were delivered by him to Coster, Knapp & Co., a firm of brokers. The precise nature of the transaction not being shown it is to be presumed that they were so delivered either (1) for present or future sale, (2) as collateral for his account with the brokers, or (3) for safekeeping.

2. In turn these bonds were delivered by Coster, Knapp & Co. to Grannis & Lawrence, also brokers, of which firm the defendant was a member. They paid Coster, Knapp & Co. $86,000 therefor, and in turn sold them to third parties for the like amount. This sum the plaintiff seeks to recover as money had and received for his benefit.

3. The issues involved are (1) whether the bonds were converted by Coster, Knapp & Co., and (2) if so, whether Grannis & Lawrence were holders in due course. As to (1) the burden rests on the plaintiff; as to (2) upon the defendant.

4. An exception to the general rule excluding hearsay testimony is the reception against one of the declarations of another who is dead, known by him when made to be against his pecuniary interest. As to such declarations contained in books of a firm made by its clerks in the regular course of business all partners are presumed to have knowledge.

5. Under the facts of this case there was a conversion as a matter of law unless the bonds were deposited for sale and were in fact sold by Coster, Knapp & Co. to Grannis & Lawrence. Even so, there was a conversion or a sale in bad faith, and under circumstances amounting to fraud if it was made with the preconceived idea of making it not for the benefit of the owner but for the benefit of Coster, Knapp & Co. Upon this point entries against interest contained in the books of Coster, Knapp & Co. were properly received in evidence. As they showed without contradiction the existence of such an intent any errors in the admission of other evidence upon the subject of conversion become immaterial.

6. Knowledge by Grannis & Lawrence of the general fraudulent course of dealing of Coster, Knapp & Co. with their customers between 1894 and 1905 may be considered by the jury upon the question as to whether that firm became holders in due course if the bonds were purchased by them in 1908. In connection with other circumstances it justified a finding against the defendant upon that point.

*Kittredge* v. *Grannis*, 215 App. Div. 486, affirmed.

(Argued October 6, 1926; decided December 31, 1926.)

APPEAL, by permission, from a judgment of the Appellate Division of the Supreme Court in the first judicial department, entered February 16, 1926, unanimously affirming a judgment in favor of plaintiff entered upon a verdict.

*Royal E. T. Riggs* and *William T. Van Alstyne* for appellant. The court erred in admitting in evidence the Marshall account and the W. B. C. and C. C. joint account as relevant upon the issue whether Kittredge had or had not ordered the sale of his bonds; and in its charge to the jury that they could consider proof of

conversions of other customers' securities as bearing upon the issue whether Kittredge had or had not ordered the sale of his bonds. (*Kittredge* v. *Lawrence*, 236 N. Y. 375.) The court erred in admitting testimony as to the previous transactions of Coster, Knapp & Company with their customers upon other occasions on the issue of good faith as to the transaction in suit. (*McBee, Inc.*, v. *Shoemaker*, 174 App. Div. 291; *Cheever* v. *Pennsylvania R. R. Co.*, 150 N. Y. 59; *Carlysle* v. *Norris*, 215 N. Y. 400; *Murray* v. *Lardner*, 2 Wall. 121; *State Bank* v. *U. S.*, 114 U. S. 401.) A broker may repledge securities of a customer pledged with him as margin along with securities of another customer, subject only to his liability for conversion if he is unable to tender to his customer, upon demand, not necessarily the identical securities originally deposited, but similar shares of the same stock. (*Stewart* v. *Drake*, 46 N. Y. 49; *Markham* v. *Jaudon*, 41 N. Y. 235; *Caswell* v. *Putnam*, 120 N. Y. 153; *Lawrence* v. *Maxwell*, 53 N. Y. 19; *Douglas* v. *Carpenter*, 17 App. Div. 329; *Sprague* v. *Currie*, 133 App. Div. 18; *Richardson* v. *Shaw*, 209 U. S. 365; *Content* v. *Banner*, 184 N. Y. 121; *Ex parte Niven*, 174 Fed. Rep. 627; *Matter of Ennis*, 127 Fed. Rep. 728; *West* v. *McLaughlin*, 162 Fed. Rep. 127.) It was reversible error for the trial justice to receive in evidence the records of Coster, Knapp & Company, as against the defendants, for the purposes offered by the plaintiff. (*Hovell* v. *The Evergreens*, 242 N. Y. 216.)

*R. Randolph Hicks, George Gordon Battle* and *George F. Canfield* for respondent. The fact that the plaintiff's bonds were negotiated by Coster, Knapp & Company "in breach of faith and under such circumstances as amount to a fraud" was established beyond any rational doubt. (*Merchants Bank* v. *Livingston*, 74 N. Y. 223; *Shaw* v. *S. H. N. Co.*, 144 N. Y. 220; *Carman* v. *Beach*, 63 N. Y. 97; *Smith* v. *Stewart*, 5 Ind. 220; *Emerson* v. *Fisk*, 6 Maine, 200; *Sandborne* v. *Coleman*, 6 N. H. 14;

*Case* v. *Jennings,* 17 Tex. 661; *German-American Bank* v. *Cunningham,* 97 App. Div. 244; *Peterson* v. *Fowler,* 162 App. Div. 21; *Interborough Brewing Co.* v. *Doyle,* 165 App. Div. 646; *Nickerson* v. *Ruger,* 76 N. Y. 279.) The books of Coster, Knapp & Company, including the J. G. Marshall and the W. B. C. and C. C. joint accounts, were relevant and legally admissible evidence both as to the negotiation of the bonds in breach of faith by Coster, Knapp & Company, and the taking of those bonds in bad faith by the defendants. (*Boyd* v. *Boyd,* 164 N. Y. 234; *People* v. *Molineaux,* 168 N. Y. 264; *People* v. *Duffy,* 212 N. Y. 57; *Altman* v. *Ozdoba,* 237 N. Y. 218; *People* v. *Dominick,* 107 N. Y. 13; *Baldwin* v. *Short,* 125 N. Y. 553; *Converse* v. *Sickles,* 16 App. Div. 49; 161 N. Y. 666; *Brownall* v. *Briggs,* 173 Mass. 529; *Bliss* v. *Sickles,* 142 N. Y. 647; *Harrington* v. *Mining Co.,* 48 Pac. Rep. 758.) The books of Coster, Knapp & Company, so far as they were admitted in evidence, contained entries proved by the witness who made them, if living, or entries made in the regular course of business of Coster, Knapp & Company and against the interest of deceased persons, all the members of the firm of Coster, Knapp & Company being deceased. (*Guy* v. *Mead,* 22 N. Y. 462; *Peck* v. *Valentine,* 94 N. Y. 569; *Rathbone* v. *Hatch,* 94 App. Div. 151; *Mayer* v. *2nd Ave. Ry. Co.,* 102 N. Y. 572; *Heike* v. *U. S.,* 192 Fed. Rep. 83; *Fisher* v. *Mayer,* 67 N. Y. 73; *Lyon* v. *Riker,* 141 N. Y. 225; *Smith* v. *Blakely,* L. R. 2 Q. B. 326; *Davis* v. *Humphrey,* 6 M. & W. 153; *Middleton* v. *Melton,* 10 B. & C. 317; *Hingham* v. *Ridgeway,* 10 East, 109.) The knowledge of Lawrence is the knowledge of the firm. (*Dresser* v. *Norwood,* 17 Com. Bench [N. S.], 466; *Distilled Spirits,* 11 Wall. 356; *Constant* v. *University of Rochester,* 111 N. Y. 604; *Holden* v. *N. Y. & Erie Bank,* 72 N. Y. 286; *Cragie* v. *Hadley,* 99 N. Y. 131; *Henry* v. *Allen,* 151 N. Y. 1; *Randall* v. *Knevals,* 27 App. Div. 146; *Marietta, etc., R. R. Co.* v. *Mowry,* 28 Hun, 79.)

ANDREWS, J.   On April 10th, 1908, the plaintiff delivered to Coster, Knapp & Co., a firm of brokers with whom he had theretofore done business, 105 negotiable railroad bonds payable to bearer.   Ninety-five of these bonds having a market value then and thereafter considerably in excess of $80,000 are involved in this litigation. Precisely what was the nature of the transaction between the plaintiff and his brokers does not appear.   Indeed the jury was told that " there is no evidence as to what transpired between the plaintiff Kittredge and Charles Coster on April 10th, 1908, or subsequent thereto other than the fact that the defendant Kittredge delivered the securities in question to Mr. Coster."   With such a record the appellant seems to concede, and such a concession is necessary, that the bonds were deposited either (1) for present or future sale; (2) as collateral to the Kittredge account with his brokers, or (3) for safekeeping.

On April 23d these 95 bonds were delivered by Coster, Knapp & Co. to another firm of brokers, Grannis & Lawrence, of which firm the defendant was a member. In return Grannis & Lawrence gave Coster, Knapp & Co. a check for $86,000 and on the same day sold them to third parties for a like amount.

Then this action was begun against Lawrence.   The claim of the plaintiff is that the bonds were converted by Coster, Knapp & Co., that Grannis & Lawrence did not become holders in due course and that consequently a recovery may be had against Lawrence as a member of his firm for the amount received by it on the sale, the theory being that it was money had and received for the benefit of the plaintiff.   The defendant, for his part, denies the conversion and alleges that in any event Grannis & Lawrence purchased the bonds in good faith and for value.   Upon the issues so framed the plaintiff recovered this judgment which has been unanimously affirmed by the Appellate Division.   Only questions of law, therefore, remain for our consideration.

Upon the former appeal in this action we stated certain rules that must govern the result to be reached. The burden was placed upon the plaintiff to prove the conversion of the bonds by Coster, Knapp & Co. This done, the burden was upon the defendant to show that Grannis & Lawrence were holders in due course.

We first consider the question of the conversion. Concededly there was a conversion if the bonds were deposited with Coster, Knapp & Co. for safekeeping. So also, if they were deposited as collateral to secure the plaintiff's account. And this whether the transaction between Coster, Knapp & Co. and Grannis & Lawrence was a sale or a loan with the bonds as security. If the former, under the circumstances developed here, Coster, Knapp & Co. had no right to make such a sale. (*Lawrence* v. *Maxwell*, 53 N. Y. 19.) If the latter, they had no right to pledge them for an amount in excess of that due them from the plaintiff. (*Strickland* v. *Mogoun*, 119 App. Div. 113; *Rothschild* v. *Allen*, 90 App. Div. 233; affd., 180 N. Y. 561; *Wood* v. *Fisk*, 215 N. Y. 233.) This rule is now enforced by statute. (Penal Law, section 956.) At most the indebtedness of the plaintiff was about $60,000 and the bonds, if pledged, were pledged to secure $86,000; and it is not claimed that the brokers had in their possession or under their control any similar bonds. Therefore, under either of these alternatives there was a conversion as a matter of law. It was shown by uncontradicted evidence and the exceptions taken by the defendant become of no importance.

We next come to the possibility that the deposit was made for present or future sale for the benefit of Kittredge. If this is the situation, Coster, Knapp & Co. had no power to pledge the bonds for their own benefit and there is testimony in the record which would fully justify the finding that such was the transaction between the two firms of brokers.

The difficulty is that while the court at one point told

the jury that the bonds were pledged with Grannis & Lawrence he later substantially submitted to them the question as to whether they were pledged or sold; and upon either theory they were instructed as to what constituted conversion. Their verdict was a general one so we are not informed which view they adopted. Therefore, the admission of incompetent and material evidence tending to show conversion if the transaction was in fact a sale, or improper and material instructions as to the law in such an event would require a reversal.

Considerable testimony was received for the purpose of proving that through a long series of years, Coster, Knapp & Co. had stolen or converted all the stock and securities that came into their hands belonging to most of their customers. We said on a former appeal that such testimony might not be received for the purpose of proving that the plaintiff's bonds were converted. (*Kittredge* v. *Grannis*, 236 N. Y. 375, 389.) We adhere to that ruling. But again this testimony was not sufficiently material to require a reversal if certain entries in books kept by Coster, Knapp & Co. were properly admitted in evidence. We refer to the so-called Marshal account. This account was received solely on the question of conversion.

The question is, to state it once again, assuming that Kittredge gave Coster, Knapp & Co. authority to sell these bonds; assuming also that they were sold to Grannis & Lawrence, was there a conversion? Many at least of the entries in question never so far as appears came to the attention of Lawrence. They were kept in the regular books of account of Coster, Knapp & Co., and were made in the regular course of their business. All of the partners of that firm are dead. The entries charged the firm with the receipt of the bonds, the transfer of them to their own account and the receipt of moneys belonging to the plaintiff on their sale. In connection with other facts they showed conclusively that the bonds if sold were sold by Coster, Knapp & Co., not for the account of the plaintiff,

1926.]                    Opinion, per ANDREWS,  J.        [244 N. Y. 168]

but with the preconceived idea of appropriating the proceeds.   Indeed, the appellant in his brief concedes that fact.

Were these entries, therefore, properly received in evidence against a third party?   Was the intent with which the authorized sale was made material as showing that such a sale was in fact a conversion of the bonds themselves and not merely of their proceeds, even if coupled with the fact that Grannis & Lawrence knew of such intent?

An exception to the general rule excluding hearsay testimony is found in the reception as against A of declarations made by B who is dead, known by him when made to be against his pecuniary interest.   (*Livingston* v. *Arnoux*, 56 N. Y. 507, 519; *Brennan* v. *Hall*, 131 N. Y. 160, 166; *Tompkins* v. *Fonda Glove Lining Co.*, 188 N. Y. 261; *Leask* v. *Hoagland*, 205 N. Y. 171, 175; *County of Mahaska* v. *Ingalls*, 16 Ia. 81.)   To be admissible such statements must be made by or with the authority, express or implied, of the deceased.   All partners are supposed to have knowledge of entries in their books made by their clerks in the regular course of their business.   (*Kohler* v. *Lindenmeyr*, 129 N. Y. 498; Chamberlain on Evidence, sec. 1363; *Hill* v. *Manchester & S. W. Co.*, 2 Nev. & M. 573.)   Presumptively both partners had access to such books.   (Rowley on Partnership, sec. 915.)   On their face these particular entries may not have been against the interest of Coster, Knapp & Co.   But earlier ones in the same account tend to show that the whole Marshal account was fictitious and in reality represented transactions of the firm, and were used by them to conceal misappropriation of the property of their customers.   The later ones show the transfer of bonds into this personal account; the transfer of them to Grannis & Lawrence and the receipt by them therefor for their own use of $86,000.   All these concededly were the plaintiff's bonds.   They thus show a pecuniary liability on the part of the brokers and they must have

realized that fact. At least often whether a certain entry is or is not against the interest of one making it must be shown by extrinsic evidence. "A fact thus stated may or may not be against interest according to circumstances." (Wigmore on Evidence, sec. 1463.) Such circumstances may and must be shown.

If then the testimony was competent, as we think it was, was it also material? " The title of a person who negotiates an instrument is defective * * * when he negotiates it in breach of faith, or under such circumstances as amount to a fraud." (Negotiable Instruments Law, sec. 94; Cons. Laws, ch. 38.) In other words, the sale of a negotiable instrument in breach of faith or fraudulently is a sale made without right. It is an unlawful interference with the owner's property therein and consequently a conversion. Here, if Coster, Knapp & Co. had authority to sell the bonds it was to sell them for the benefit of the plaintiff and in his interest. The authority to sell was coupled with this limitation. They sold them for objects beyond the power which had been given them. " The result of the authorities is that if the agent parts with the property, in a way or for a purpose not authorized, he is liable for a conversion. But if he parts with it in accordance with his authority, although at less price, or if he misapplies the avails, or takes inadequate for sufficient security, he is not liable for the conversion of the property." (*Laverty* v. *Snethen*, 68 N. Y. 522.) Where a sale is authorized by an agent for a specific purpose, as here for the benefit of the plaintiff, the object for which the sale is to be made limits the authority to make it. (*Hynes* v. *Patterson*, 95 N. Y. 1; *Decker* v. *Mathews*, 12 N. Y. 313; *Price* v. *Keyes*, 1 Hun, 177; *White* v. *Wall*, 40 Me. 574.) The sale by such an agent for his own benefit is more than a mere disobedience of instructions. (*Delmelman* v. *Brazier*, 198 Mass. 458.)

But while we are inclined to think that there was a technical conversion here, it is not necessary to and we

1926.]	Opinion, per ANDREWS, J.	[244 N. Y. 168]

do not decide this question. The name given to the proceeding is unimportant. In any event the sale of the bonds with the preconceived idea of making the sale, not for the benefit of the owner but for the benefit of Coster, Knapp & Co., was a breach of faith and amounted to a fraud. The purchaser under such circumstances to be protected must show that he received them in due course. Therefore, in view of the undisputed facts other evidence admitted to show conversion, even if improper, could have had no material bearing on the result. Any exceptions taken to it may be ignored. And further, the various rulings of the court upon this branch of the case in response to requests to charge were correct.

Assuming, therefore, that there was a conversion of these bonds by Coster, Knapp & Co., or that in the sale there was a breach of faith amounting to fraud, the next question to be considered is exceptions touching the question as to whether Grannis & Lawrence became holders in good faith. As to them we start out with the presumption that the brokers having possession of these negotiable instruments had the right to sell them. They had presumably also the right to pledge them for the amount due from the customer, and the pledgee taking them in due course might assume that the pledge was of right. In the absence of knowledge to the contrary or of facts which required inquiry Grannis & Lawrence might rely upon these presumptions. They deny that they had any such knowledge or that any such facts existed. As to them as bearing on these questions any entries in the books of Coster, Knapp & Co. with which they were not acquainted are incompetent. The question is as to what they knew or should have known when they took the bonds, and here it is immaterial whether the transaction between Grannis & Lawrence and Coster, Knapp & Co. was a loan or a sale. The issue of fact between the former firm and the plaintiff is whether they had conspired generally with Coster, Knapp & Co. to rob the customers of that

12

[244 N. Y. 168]      Opinion, per ANDREWS, J.      [Dec.,

firm of whom the plaintiff was one, or whether they had knowledge of such facts as should have reasonably caused suspicion when they received the bonds, and required of them proper investigation.

Robert C. Lawrence had been an employee of the firm of Coster, Knapp & Co. from 1894 to July 31, 1905. At first he was a bookkeeper, and later he seems to have been more or less a manager of the business under Mr. Coster. The testimony justifies a finding that prior to his departure he was familiar with the books of the firm. Under these circumstances all of the firm books prior to July 31, 1905, were admitted in evidence against him.

Coster, Knapp & Co. had comparatively few accounts with customers — not to exceed fifty. These books showed clearly, or the jury might so find, that in very many instances — so many that it was an ordinary incident of their business — the firm converted the property of their customers to their own use and applied the proceeds for their own purposes and those of their employees, even for the benefit of Lawrence himself. The jury might further find that the defendant knew of this custom. Was his knowledge of what had been going on prior to 1905 such as to place upon him the duty of inquiring when the bonds of the plaintiff were offered to him in 1908? Does it raise a question of his good faith at that time? Clearly as against him, entries with which he was familiar were competent on this question. Again it is a question as to their materiality.

Mere negligence in taking a negotiable instrument is not enough. (*Cheever* v. *Pittsburgh, etc., R. R. Co.,* 150 N. Y. 59.) There must be bad faith. Actual notice on the part of the transferee of the defect in title is sufficient proof on this point. Less may make a question of fact. Gross carelessness (*Canajoharie Nat. Bank* v. *Diefendorf,* 123 N. Y. 191), knowledge of facts that would create suspicion in the mind of a prudent man (*Seybel* v. *Nat. Currency Bank,* 54 N. Y. 288), circumstances that other-

wise fairly raise the question of his bad faith and create reasonable grounds for suspecting his conduct in the transaction (*American Ex. Nat. Bank* v. *N. Y. Belting, etc., Company,* 148 N. Y. 698; *Second Nat. Bank* v. *Weston,* 172 N. Y. 250), permit the inference that his conduct was not innocent.

Here, knowledge on the part of the defendant that through a long course of years up to July 31, 1905, Coster, Knapp & Co. had systematically defrauded their customers and that the firm was insolvent in that year was a circumstance which the jury might consider on the question of the good faith of the defendant in 1908. (*Loftin* v. *Hill,* 131 N. C. 105; *Harrington* v. *Mining Co.,* 48 Pac. Rep. 758; *Merrill* v. *Hole,* 85 Ia. 66; *Bowman* v. *Metzger,* 27 Ore. 23; *Ormsbee* v. *Howe,* 54 Vt. 182; *Bank* v. *Goodsell,* 107 Mass. 149; *Bank* v. *Sullivan,* 63 Minn. 468.) In *Goetz* v. *Bank of Kansas City* (119 U. S. 551) evidence was given of the character of the drawer of a bill of exchange as tending to show bad faith on the part of the holder. The Supreme Court said the particular evidence in question was too uncertain, but does not dispute its materiality had it been more definite.

It may be that, standing alone, this evidence might not have raised a question for submission to a jury. (*Trust Company* v. *Wilson,* 161 Mass. 80.) But it is a matter which in connection with others the jury may consider. The lapse of time between 1905 and 1908 has to do with the weight of the evidence, not its competency. And there are other circumstances. While Lawrence claims that the bonds were sold to his firm, it certainly was not an ordinary sale. If they were delivered as collateral security for a loan it was not the usual proceeding. Grannis & Lawrence held over $1,500,000 worth of stocks for Coster, Knapp & Co., protected as the jury might find by no sufficient margin. And they might again find that Lawrence knew that Coster, Knapp & Co. were insolvent in 1905. Shortly before this trans-

action he made them a personal loan of $4,000. This may raise the inference that he realized from their need of so small a sum that their financial condition had not improved. In this state of affairs Grannis & Lawrence received these bonds. At one point Lawrence says it was as collateral for a loan. If so the loan was for their full value. Again he says this: " So I arranged that I would buy the bonds at the market price, and if we could get any better price than the price I paid we would settle at one-eighth per cent., so that we would make one-eighth per cent. on the actual final sale of the bonds." And in spite of his claim that it was a sale, Grannis & Lawrence received $84.16 interest in the transaction. Such is not, or at least the jury might so find, the usual transaction of purchase and sale between brokers. Also suspicion as to the business dealings of Coster, Knapp & Co. might well have been aroused by simultaneous orders to buy and sell the same amounts of the same stock given to Grannis & Lawrence — the transactions appearing on the books of the latter.

As bearing upon the same question of good faith, however, some books and entries thereon of Coster, Knapp & Co., made after July 31, 1905, with which the defendant had no connection and of which he had no knowledge, were admitted in evidence. This was clearly error. But unless the error was substantial we should not reverse on that account. Most of this evidence is not before us. It was stipulated that the exhibits should not be printed and should not be referred to except in so far as they were read into the record. What was read consists in many cases of entries tracing the fate thereafter of accounts between the firm and their customers. The earlier entries, properly received, justified the jury in finding the conversion of the customers' funds and knowledge by Lawrence of this habit. What happened later seems to have in no wise strengthened this inference. In others, entries are corroborated by the books of Grannis

& Lawrence. There are, however, a series of transactions with which Lawrence is not shown to have any connection. Apparently they were not received on the issue of good faith but on the issue of conversion by Coster, Knapp & Co. They were not competent for any such purpose, but, as we have indicated, the error was harmless. In the charge the jury were told that evidence of these transactions was received on the claim that Coster, Knapp & Co. operated their whole business as a fraud, and as bearing upon the question whether they converted these particular bonds of the plaintiff. As relating to good faith the court confined himself to a reference to entries made before July 31, 1905, and to transactions on or about April 23, 1908. In so doing he did refer to the amount of the bank balance of Coster, Knapp & Co. on April 9th. Evidence of this fact was incompetent. So far as appears, Lawrence had no direct knowledge of its amount. This error, however, is not of sufficient importance to require a reversal. On April 10th Lawrence advanced them $4,000 and this he would hardly have done in view of the state of the accounts between the two firms, had this balance been of a substantial amount. This is the way the question was finally left to the jury.

These are the principal questions argued by the appellant. The judge made various charges in response to his requests, too favorable to him, but as to these he may not complain. The judge also erroneously told the jury that if, as was concededly the fact, Coster, Knapp & Co. pledged the bonds for their own debt with the Hanover National Bank, then any authority they might have had to sell the bonds was terminated and the burden of showing good faith was cast upon the defendant. No reference to this was made before us. Nor in view of the undisputed facts in any view showing conversion is the error material.

Nothing we have said modifies or varies the opinion in 236 New York. There, the record was confusing. Here

we have one more complete. We have testimony as to the knowledge by Lawrence of the books of Coster, Knapp & Co., kept prior to 1905, especially as to the Marshal account there absent. Nor was the question presented to us whether if a sale was authorized it must be made for the purpose for which the authority was given. We then undertook to express but the general rule — not all possible exceptions. In this record of 1,657 pages one may discover many erroneous rulings. But as it seems to us proof of conversion exists as a matter of law. The jury was fully justified in finding that Lawrence was not a holder in due course. The errors were not of materiality sufficient to affect the result.

The judgment appealed from should be affirmed, with costs.

CARDOZO, POUND, McLAUGHLIN and LEHMAN, JJ., concur; HISCOCK, Ch. J., and CRANE, J., dissent on the ground that incompetent evidence was erroneously admitted.

Judgment affirmed.